Carr, J.
The order of dissolution does not state the ground on which the chancellor proceeded : it must have been, either, 1. that he had no jurisdiction; or 2. that there was fraud; or 3. that the purchase of Crews gave him no right to the growing crops.
Upon the ground of fraud, I can hardly suppose the chancellor acted. His decree in the first suit (acquiesced in by all, and to which the appellee Pendleton is stated to have been a party) had pronounced the mortgage fair, decreed their debts to the mortgagees, and ordered a sale. If the allegations in the answer of the use by Long of the crops, of his continued possession, and of a fraudulent combination between him and Crews, had raised suspicions in the mind of the chancellor, of the fairness of the transactions subsequent to the decree j he surely would not have taken these allegations (not responsive to the bill) as proofs, but would have given time for the taking of evidence. He would not have dissolved the injunction the very day after it was granted.
As to the question of jurisdiction (though few are more jealous of equity on this point than I am) I think there can be no doubt about it. The chancellor had decreed a sale of the mortgaged property: under that sale, Crews had bought, and received possession from the officer of the court: the whole matter was still pending. If the marshal had made his report, the court had not acted upon it. The order of sale did not authorise the marshal to make a deed to the purchaser, but merely to sell for cash, pay the debts due the mortgagees, and report his proceedings to the court. Crews's purchase did not give him the legal title till the *305 chancellor should confirm the sale, and a' deed should be made to him. Till this was done, it was the bounden duly of the court, to protect the purchaser. In contemplation of law, the property was still in possession of the court. The application to the chancellor, then, was the natural and proper resort.
With respect to the growing crops, the question does not seem to me to involve the general doctrine of emblements, Tout to depend on the particular contract of the parties. There can be no doubt, that if one sell his land without any reserve, all the crops, not severed, will pass to the purchaser. They are a part of the subject, and enter into the price. The contract between the mortgagor and mortgagees is, in effect, this: “I convey you my land, slaves &c. as a security for the debts J owe you ; I bind myself to pay you those debts by a given time, and if I fail, you may proceed, and get a decree for a sale of the subject; meantime, I remain in possession, use the slaves, and take the profits of the land 5 but, whenever you get a decree, you may immediately sell every thing.” Under this agreement, if the mortgagor goes on and makes preparation for a crop, he does it with a full knowledge, that the land with the crop is subject to be sold, if the decree be obtained before he severs it. Nor does he lose any thing by this: for the crop on the land enhances the price; if by this increase, the debt be overpaid, he gets the overplus; if not, still the full value of his labour goes (as he had agreed it should go) to the payment of the debts secured by the mortgage.
In this case, such a result seems the more just, as the crop was prepared with the mortgaged slaves, and as (the sale being in dune) a great portion of the labour in producing, gathering, and saving the crop, was performed by the purchaser.
The other judges concurred: and the decree was reversed, and the cause remanded, that the injunction might be reinstated.