Baldwin, J.
It is necessary in the first place to consider whether the decree of March 1825 was final or interlocutory; for if final, we cannot enquire into its merits, more than three years having elapsed from the time of its rendition prior to the appeal, by which, under the law then existing, the right of appeal was barred : and it follows, in that view of the case, that the proceedings subsequent to that decree (which treated it as interlocutory), including the decree of March 1829 and the decree on the forthcoming bond, were erroneous and must be reversed. On the other hand, if the decree of 1825 was interlocutory, we must examine its merits, as also those of the subsequent proceedings.
A decree is final, when it either refuses or grants the redress sought by the party complaining. The plaintiff being the party who ordinarily seeks relief, the refusal of the court to allow it is usually accomplished by dismissing the bill. That of course terminates the cause, and sends the parties out of court. On the other hand, the case is also terminated by the granting of the whole relief contemplated by the court. In regard to that result, there can' be no summary form by which it is to be *27 accomplished; and we must look to the nature of the relief granted, in order to ascertain whether it is the final action of the court. Hence the difficulty which sometimes occurs in ascertaining whether a decree is final or interlocutory. An interlocutory decree may be merely preparatory to a decision upon the merits, by directing an enquiry necessary to the elucidation thereof, as for example the ordering of an issue; or it may go further, and deciding the principles as then presented by the record, institute proceedings for the purpose of enabling the court thereafter to apply those principles to the details of the subject, as for example directing an account; or it may approach still more nearly to the nature of a final decree, by granting relief in part, and suspending the action of the court as to the residue for further investigation, or by directing measures for entire relief to a certain extent, with a view to perfecting them thereafter, upon the supposition of contingencies or emergencies which cannot be well provided for by anticipation ; which last case may be illustrated by an order for the sale of property, without direction as to the application of the proceeds. And so, by various gradations, the interlocutory decree may be made to approximate the final determination, until the line of discrimination becomes too faint to be readily perceived. Thus it becomes necessary to resort to some criterion by which the distinction between the two kinds of decree may be preserved : and I regard it as comparatively of but little importance what that criterion is, provided it be uniform, and capable of a certain application; for so soon as it becomes established, the courts of original cognizance, and the parties to the controversy, by conforming to the rule, will avoid the greatest inconvenience which can occur,—that of uncertainty whether further judicial action is to be had in the inferior or the appellate tribunal. For my own part, I am aware of no proper criterion but this: Where the further ac *28 tion of the court in the cause is necessary to give completely the relief contemplated by the court, there the decree upon which the question arises is to be regarded not as final, but interlocutory. I say the further action of the court in the cause, to distinguish it from that action of the court which is common to both final and interlocutory decrees, to wit, those measures which are necessary for the execution of a decree that has been pronounced, and which are properly to be regarded as adopted, not in, but beyond the cause, and as founded on the decree itself or mandate of the court, without respect to the relief to which the parly was previously entitled upon the merits of his case. Any other criterion than this seems to me liable to the objection of ambiguity or uncertainty.
To apjoly this criterion to the present case: The court treated the defendant Gilpin as standing in the attitude of plaintiff, and decreed to him against his adversary Cocke the balance found in his favour, and that in the event of nonpayment, Cocke's moiety of the Kentucky land should be sold for satisfaction thereof. Now, the relief in part contemplated by the court clearly was, that Cochis interest in the land should be sold without unnecessary sacrifice, which was the obvious interest of both parties, as it could not be foreseen that Gilpin was to become the purchaser. But how could this object be •accomplished, unless by the adoption of means to give to the purchaser at the sale the title which had been acquired by the parties ? It could not have been contemplated'by the court that the land should be sacrificed, by withholding the title from the purchaser, and giving the bidders to understand, not only that the officer authorized to sell was without authority to convey, but that the court had disrobed itself of the power to cause a conveyance to be thereafter made. Such was the inevitable result of regarding the decree for sale as the final action of the court; for it gave no authority to the *29 marshal to convey to the purchaser the title vested in the parties, and there being no title in the marshal, a deed from him would have been a mere nullity. Whereas, upon the supposition that the decree was interlocutory, the omission to direct a conveyance by the marshal was wholly unimportant, as the purchaser would buy under the confident expectation that the court would, at the accustomed period, exercise its unquestionable power of conferring upon him a title to the property. Thus it will be seen that the further action of the court in the cause was necessary to give completely the relief which it contemplated: and we cannot suppose that the court intended to withhold the title from the purchaser, without subjecting it to the imputation of designing a sacrifice of the property.
The structure of the decree, it is true, in some of its parts, would seem to indicate at first view that the court supposed it to be final. Thus the balance due to Gilpin is directed to be paid to him by the marshal out of the proceeds of the sale, and the residue, if any, to be paid to the plaintiff-; there is no direction to the marshal to report his proceedings to the court; and the costs of the suit are disposed of, by awarding them to be equally borne by the parties. But none of these circumstances, in my opinion, gave finality to the decree. Whatever may be thought of the expediency of disposing of the proceeds before a confirmation of the sale, it is certain that it would not deprive the court of its power to set aside the sale for irregularity or fraud ; though it might occasion obstacles to replacing the parties in their previous condition. So the omission to require the officer to report his proceedings is a mere informality, as an order of that kind must be regarded as merely directory, if it be the accustomed duty of such a commissioner to inform the court of what he has done under its authority, as I think there can be no doubt it is. And as to the disposal of the costs, that is a matter (as concerns this question) altogether equivocal; for the court has un *30 doubtedly the power to dispose of the costs which have accrued, from time to time, at any stage of the cause, or not to dispose of them at all, according to its discretion. These circumstances, therefore, can only tend to raise a probability that the court may have supposed the effect of its decree would be final instead of interlocutory; and even in that point of view can have no weight, if the substantial purpose and scope of the decree was, as I think I have shewn, of an interlocutory character. Such a supposition of the court would be a speculative inference from the provisions of the decree, unnecessary in the discharge of its duty, and in no wise obligatory upon its future conduct; in truth, an abstract opinion merely, which it was at liberty to disregard, and has in fact (if ever entertained) disregarded, in its subsequent action upon the subject.
It is obvious that the whole apparent difficulty upon thi§- question has arisen from the omission in the decree, of a direction to the marshal to report his proceedings to the court. If that had been done, I presume no one would have questioned the interlocutory'character of the decree. And yet nothing is clearer to my mind than that such a direction in a decree would not make it interlocutory, if it gave final relief by its provisions; and so, on the other hand, that the omission of such a direction would not make a decree final, if by its provisions the relief was interlocutory. Such an omission is not an error of judgment in the court, requiring the correction of an appellate tribunal, but is rather in the nature-of a clerical misprision, which the court may at any time thereafter correct, and which in fact it does correct by its subsequent treatment of the decree as interlocutory.
I can perceive no inconvenience whatever from my interpretation of the decree in question. It certainly cannot operate so as to defeat the justice of this case; but on the contrary must have the effect of promoting it, if the decree be erroneous upon its merits. To *31 that desirable object, it is true, I would not sacrifice principles important and salutary in the general administration of justice; but the attainment of it can furnish no argument against the exercise of the appellate jurisdiction of this tribunal. The uniform establishment of the criterion to which I have resorted, can, in my estimation, be productive of none but beneficial results. The effect of discarding it would oftentimes be to fix upon the inferior court an error by implication, and to occasion uncertainty as to the proper forum for obtaining redress. On the other hand, what harm can be done by extending to the court of original cognizance the indulgent belief, that it did not wilfully turn aside fiom the safe and beaten path of equitable administration, for the purpose of delegating an arbitrary and unrestrained judicial authority to a merely ministerial officer ? Where can be the mischief or inconvenience, whenever the judicial action of the court itself in the cause has not been perfected, of permitting it to control the ministration of its servants, and even to turn back and correct its own errors of omission and commission, instead of driving the parties into an appellate forum.1 I admit the wisdom and obligation of the legislative policy which inhibits the reexamination of an adjudicated cause after the lapse of the prescribed period. But the policy and duty of preventing such reexamination in the appellate tribunal, before the final adjudication of the inferior jurisdiction, are equally apparent, save only in those cases, founded on peculiar reasons, which have been made exceptions by legislative enactment. Nor do I perceive the expediency of attempting to guard against injurious delays in the judicial action of the primary forum, after the merits of the cause have been there settled, by the necessity of encountering equal if not greater, and, it may be, repeated delays in the supervising tribunal.
*32 On this subject, but little light is to be obtained from the practice and decisions of the english chancery. There they have no practical distinction between interlocutory and final decrees, as regards the right of appeai. That right is not, as with us, regulated by statute, and from the time of its first introduction has existed as well in relation to interlocutory as to final decrees. It is somewhat remarkable that a misapprehension of that matter should have prevailed so extensively amongst us, as the english books of practice are quite explicit in regard to it: see 1 Harr. Ch. 454, 457. 2 Smith’s Ch. Pract. 40. Seaton’s Forms 3.—from which it is clear that an appeal lies to the house of lords from any interlocutory order. The right of appeal, according to the english practice, does not depend upon the stage at which the cause has arrived, but upon an arbitrary regulation, equally applicable to interlocutory and final decrees, to wit, the enrolment of the decree or order. The enrolment is at the instance of a party, by a docquet prepared from proceedings, papers and pleadings in the cause, which is examined and signed by the sixclerk, and left with the secretary of decrees for the signature of the lord chancellor, by which it is completed. 2 Smith’s Ch. Pract. 4. Prior to enrolment, an order or decree, however final in its character, may be corrected or varied, on a petition for rehearing before the same judge, or of appeal to the lord chancellor, which is regarded as a rehearing and governed by the same rules. After enrolment there can be no rehearing of a decree or order, whatever may be its character; and the only appeal is to the house of lords. The enrolment may be made as soon as it can be prepared, but six months are allowed for it, and after that an order may be obtained from the lord chancellor, nunc pro tunc. It is not prevented by the death of a party, or abatement of the suit. If a party wishes to prevent a decree or order from being *33 reheard before the judge who pronounced it, or an appeal to the lord chancellor, he must enrol it; the effect of which is to make the decree or order of the vice-chancellor or the master of the rolls, that of the lord chancellor, and to deprive the latter of the power of rehearing, whether the decree or order be originally his own, or that of one of the other judges. But the enrolment may be prevented by a petition of rehearing, or appeal to the lord chancellor, or a caveat filed for the purpose of enabling a party so to proceed within a given time. On this subject see 2 Smith’s Ch. Pract. 2. 3. 4. 14. 17. 18. 27. 39. 426. 1 Harr. Ch. 439. 442. 481. The effect of an enrolment is the same in regard to a bill of review, whatever may be the character of the decree; so that if a party resorts to the same tribunal after enrolment, he must do it by bill of review, though the decree be merely interlocutory. 2 Madd. Ch. 454. 464. 2 Smith’s Ch. Pract. 48. 49. 64. Thus it will be seen that though the enrolment does not depend upon the nature of the decree, yet it has the effect of giving it a degree of finality; and hence it is also resorted to by a party to give additional security to his title, to enable him to plead the decree against another suit for the same purpose, and to obtain the benefit of the limitation to an appeal by the standing order of the house of lords, which is computed from the enrolment, and not from the date of the decree. 2 Smith’s Ch. Pract. 2. 3.
The practice of enrolment is unknown in Virginia, as are many other matters of practice in the multifarious and expensive system of the english chancery, requiring numerous officers, and calculated to promote accuracy and precision, and relieve the court from laborious details, by condensing and simplifying the questions submitted to its consideration. As we do not resort to the practice of enrolment, our course has been to look to the character of the decree, in reference to rehear *34 ings, appeals, and bills of review. ' With us the right of appeal, from the foundation of the government, has been regulated by statute, and for a number of years was made to depend altogether upon the finality of the decree, in relation to appeals to the supreme court of appeals. Thus the acts of October 1778 and May 1779, establishing the court of appeals (9 Hen. stat. at large 523, 4. 10 Id. 90.) and the revised act of 1792, (12 Id. 406.) by their plain terms require the decree or decision of the court below to be final. The manifest meaning, ex vi termini, was that the cause should be terminated before its removal to the appellate jurisdiction; and the obvious policy was to prevent the delay and expense of unnecessary and reiterated appeals. Appeals were not allowed from interlocutory decrees to the court of appeals until January 1798, when, by an act of that date, a limited right of appeal from interlocutory decrees was introduced, which has been since continued under various modifications. 2 Rob. Prac. 421-5. But the right of appeal from final decrees still stands upon its original footing. 1 Rev. Code, ch. 66. § 50. 51. p. 206. Suppl. to Rev. Code, p. 146, 7.
The result of our legislative policy on this subject has been, that as a general rule, the jurisdiction of the supreme appellate tribunal does not begin until that of the inferior court has terminated; that an appeal properly allowed brings into discussion before the appellate court all the previous proceedings in the cause; and that (pending an appeal, the further cognizance and proceedings of the court below are suspended in relation to any question involved in the cause, so far as its merits are concerned. -In these respects we have departed from the rules of the -english chancery. There, a decision of the chancellor which settles a principle, or ■gives relief to any extent, may be brought at once before the house of lords, if the decree-or order has been enrolled : there the discussion in the appellate forum is *35 confined lo the decree or order appealed from, and cannot be extended to any previous proceeding, however much the justice of the case may require it, without a formal extension of the appeal, (2 Smith’s Ch. Pract. 41. Bouchier v. Dillon, 5 Bligh 714.): and there the appeal does not suspend proceedings upon the decree, without a special order, which is rarely granted. 2 Smith’s Ch. Pract. 68. 69. Willan v. Willan, 16 Ves. 216. Walburn v. Ingilby, 1 Mylne & Keene 61. 6 Cond. Eng. Ch. Rep. 498.
It will be seen from an examination of the numerous decisions of this court on the subject of the finality of decrees, in reference to appeals, bills of review &c. that they have all been founded upon the idea, that a decree is not final unless the cause itself has been thereby terminated in the court below. Thus, though a decree decides upon the question of title, or otherwise settles the principles of the cause, Young v. Skipwith, 2 Wash. 300. Grymes v. Pendleton, 1 Call 54. M’Call v. Peachy, 1 Call 55. Bowyer &c. v. Lewis, 1 Hen. & Munf. 553.—though it dismisses the plaintiff’s bill as to one of two separate subjects of controversy, and as to the other also determines the rights of the parties, Templeman v. Steptoe, 1 Munf. 339.—though a decree nisi directs that the tract of land in the bill mentioned be surveyed and part thereof allotted to the plaintiflj and that the defendant shall execute to him a conveyance for such part, and pay the costs of the suit, Aldridge &c. v. Giles &c. 3 Hen. & Munf. 136.—though the decree directs the defendant to pay to the plaintiff hires to be ascertained by commissioners, and to deliver up the property, to be sold by the commissioners, and the proceeds applied to payment of the plaintiff’s claim and the costs of suit, and the residue, if any, to be paid to the defendant, Mackey v. Bell, 2 Munf. 523.—though, at the suit of creditors against executors and devisees, it empowers the executors to sell such of the lands held by the devisees, as, *36 after application of the testator’s goods and credits, shall be necessary for the payment of his debts, Goodwin v. Miller, 2 Munf. 42.—though it awards to the plaintiff his principal money, interest and costs, if it directs, in t¡ie event 0f an unproductive execution, that certain trust property shall be delivered by the defendant to the marshal to be sold, and the proceeds, after deducting a sum to be deposited for another, to be applied to the satisfaction of the plaintiff, Hill’s ex’or v. Fox’s adm’r, 10 Leigh 587.—though, in a mortgage suit, it forecloses the mortgage and directs the sale of the property, Fairfax v. Muse’s ex’ors, 2 Hen. & Munf. 558. Ellzey v. Lane’s ex’x, Id. 592. Allen v. Belches, Id. 595.—yet in all these cases the decree is only interlocutory, if something yet remains to be done in the cause, and so the parties are not put out of court.
On the other hand, there is no case decided by this court, in which the decree has been held to be final where the judicial action of the court in the cause has not been exhausted. I do not mean that it is necessary the court by its decree should respond to all the questions in controversy, or to the whole relief prayed in the bill, its silence being often equally emphatic; but that this court has never held, where a given relief was contemplated, that the decree was final, if something remained to be done in the cause to render it effectual. The case of Harvey & wife v. Branson, 1 Leigh 108. has been strongly urged upon us by the appellee’s counsel; but the principles of that case, in my opinion, are altogether different from those properly applicable to this. That case, and the case of Borden v. Bowyer &c. connected and determined with it, involved the distribution and appropriation of a fund arising out of the sales of detached fragments of what was originally an immense estate of unsettled lands, but the greater portion of which had been disposed of before the existence of the controversy. The suits were pending many years, *37 and the fund had accumulated under the management of an agent (appointed by the court and acting as commissioner and curator) from the proceeds of sales made by him from time to time, and accessions to it were to accrue indefinitely thereafter from like sales that he was to continue to make as opportunities should offer. The commissioner had ample powers to sell and convey by private contracts according to his discretion, and to loan out and secure the proceeds from time to time. Under these circumstances (which I derive not merely from the reported statement, but from my own recollection, having been counsel in the cause in the chancery court) the court undertook to dispose of the whole subject by a decree conformable to its views of the rights of the parties, and embracing not merely the moneys on hand, but also the increment thereafter from the future sales. That decree was substantially the ultimate judicial disposition of a continuing trust; and a final decree could not be made in the cause in any other mode than that adopted by the court. It gave the whole relief contemplated by the court, and no further action of the court in the cause was requisite. It distributed and appropriated not only the fund on hand, but all that was thereafter to accrue under the continued agency of the commissioner. If the commissioner performed his prescribed duties in good faith, the parties could sustain no prejudice from any want of authority on his part; and if he acted unfaithfully, he would be liable to the control of the court, in like manner as any other ministerial officer engaged in the execution of its decrees. It is true there were reservations in the decree, of leave to the parties, at any time thereafter, to apply to the court to supersede the commissioner, or to appoint any other commissioner or commissioners to act with or to succeed him, or to have the unsold lands divided amongst the parties according to their prescribed proportions. But those reservations for the more complete and bene *38 ficial execution of the decree, so far as they could be . 4 ** considered as transcending the incidental powers of the court, did not render the decree the less final, but were powers withdrawn from the cause and engrafted upon the decree from which thenceforth they derived their whole force and efficacy. The case, it seems to me, is widely different from the one before us, which is rather that of the constitution of a new fund than the disposal of one then existing, and more like a decree for the sale of mortgaged premises without provision for conferring upon the purchaser at the sale directed the title to the property.
The other cases of decrees held by this court to be final require but little notice. Those of Sheppard's ex'or v. Starke & wife, 3 Munf. 29. and Thorntons v. Fitzhugh, 4 Leigh 209. turned upon reservations in the decree of a future resort to the court, which were decided not to affect their finality. That of Royall's adm'rs v. Johnson &c. 1 Rand. 421. presented the question whether a decree was final as to one defendant though interlocutory as to the rest; and it was, under the circumstances, decided in the affirmative. A similar question had arisen in the case of Alexander's heirs v. Coleman & wife, 6 Munf. 328. in which the result of the opinions of a divided court was that the decree, under the circumstances, was interlocutory. These cases, though cited in the argument, have no bearing upon the present, except so far as the reasoning of the judges may be supposed to throw light upon the general subject.
It seems to me that the effect of treating such a decree as the one in question as final, is to impair the controlling power of the court of original cognizance over the execution of its own decree; for it is obvious that it would be nugatory for that court to set aside a sale under the decree, however great the sacrifice, because of an objection arising out of a defect in the decree itself, without at the same time correcting the decree, *39 which cannot be done upon the supposition of its finality; though in such a case we have a right to suppose that the property was sacrificed, because the purchaser was not expected to obtain a conveyance of the title, or that injustice is done him by withholding the title after he has paid the value of the property. It cannot be doubted that a decree or order of the court at some stage of the cause is necessary to enable the purchaser to obtain the title ; and if that decree or order be made subsequently to the sale, it is the final decree or order in the cause, and consequently the decree for sale interlocutory. It w’ould derogate much from the power and dignity of that court, to treat the purchaser as having acquired a right to the property, and at the same time turn him round to a new suit for the purpose of obtaining a conveyance. In truth, however, the purchaser acquires no right until a confirmation of the sale by the court; and until the order confirming the report, he is only inchoately and not absolutely a purchaser, having till then no fixed interest in the subject. That such is the english doctrine is well settled; Sugd. on Vend. 50. 51. 52. 57. Ex parte Minor, 11 Ves. 559. Twigg v. Fifield, 13 Id. 517. Anson v. Towgood, 1 Jac. & Walk. 619. The same doctrine has been recognized by this court in several cases, Crews v. Pendleton &c. 1 Leigh 297. Heywood v. Covington's heirs, 4 Id. 373. Taylor v. Cooper, 10 Id. 317. from the first of which it will be seen that before the confirmation of the report and conveyance of the title, the purchaser must resort to that tribunal in which the proceedings were had, for the adjustment and enforcement of his claims.
It has been suggested by one of the appellee’s counsel, that in relation to mortgages this court has departed from the english doctrine, according to which he supposes the decree for foreclosure to be final, and that the english rule was followed by the supreme court of the United, States, in the case of Ray v. Law, 3 Cranch 179. *40 But upon consulting the authorities, it will be found that the english doctrine is directly the contrary; and it will be seen from the report of Ray v. Law, that it was decided without argument, and, it would seem, without much consideration. The english rule is, that the final order to a decree of foreclosure is absolutely necessary to its perfection; so much so, that without its being obtained, a decree of foreclosure is not a good plea to a bill to redeem. 5 Bac. Abr. 733. Coote on Mortg. 527. Senhouse v. Earl, 2 Ves. 450. The length to which the rule has been carried appears from the case of Thompson v. Grant, 4 Madd. Ch. Rep. 438. There a question arose as to the effect of a decree of foreclosure in another cause. The decree had directed the master to take an account of principal, interest and costs, and that upon the defendant’s payment thereof within six months after the making of the report, at such time and place as the master should appoint, the plaintiff should convey and reassign the mortgaged premises; but that in default of such payment by the time aforesaid, the defendant should thenceforth stand absolutely debarred and foreclosed of and from all right, title, interest and equity of redemption of and to the said mortgaged premises. The master reported the amount due to the plaintiff for principal, interest and costs, and appointed a day for payment thereof by the defendant to the plaintiff. Afterwards, on affidavit of nonpayment, a final order was made that the defendant should stand absolutely debarred and foreclosed of and from all right, title, interest and equity of redemption in and to the mortgaged premises. But the mortgagee, between the decree of foreclosure and the final order, made his will, by which he devised all lands which should be vested in him by mortgage at the time of his death, as part of his personal estate. He did not die until after the final order, and the question was whether the mortgaged premises passed by the devise; and it was held that they *41 did not, the effect of the final order being to convert the mortgage chattel interest into a fee simple estate. Thus, notwithstanding the decree of foreclosure, the mortgage still remained a mortgage, and would have passed as such under the devise but for the intervention of the final order, which changed the character of the estate and took it out of the operative words of the devise, the foreclosure being completed by the final order, and the decree previously merely interlocutory and prospective. And upon this ground the cause was decided against the devisees, though there were other terms in the devise which would have embraced the estate, if after acquired lands could have passed by will.
If it should be supposed that purchasers under such a decree as the one we are considering would be liable to mischief by treating it as interlocutory instead of final, I w'ould remark that the mischief, in my apprehension, lies the other way ; for though the lapse of five years protects the decree, if final, from being reversed by appeal or bill of review7, yet within that period it is infallibly liable to such reversal, because fatally erroneous from its very finality; and if so reversed, the purchaser’s claim must, for the same reason, necessarily fall: whereas if the decree be interlocutory, the purchaser has nothing to do but to obtain a confirmation of the report and a conveyance of the title, in which aspect there is no error nor irregularity in the proceeding, and he is then protected against all other irregularities in the cause, if the proper parties having title to the subject be before the court; the rule being, that a purchaser has a right to presume that the court has taken the steps necessary to investigate the rights of the parties, and on that investigation has properly decreed a sale. 2 Smith’s Ch. Pract. 198. Bennet v. Harrell, 2 Sch. & Lef. 566. In fine, I cannot perceive the propriety of construing a decree to be final, and there *42 by rendering it erroneous, when the regarding it as interlocutory relieves it from the imputed error.
The foregoing views lead me to the conclusion that ° 0 the decree of March 1825 was interlocutory.
Upon the merits, that decree is clearly erroneous. [The judge here pointed out the errors, but the correction of them involved no such general principle as would make a particular report thereof necessary, or indeed proper. After stating the nature and extent of each of the errors so pointed out, he proceeded as follows :]
For these errors the decree of 1825, and the final decree of 1829 of which it forms the basis, ought, in my opinion, to be reversed, and the sale made under the former of Cocke’s moiety of the Kentucky land (which has never been confirmed) set aside, the property having been subjected for an improper amount, and purchased in by the appellee at a sacrifice. I cannot agree with the appellee’s counsel, that the infant heirs of Cocke not having appealed, the appellant has no right to complain of the improper sale of the land, on the ground that he has no interest in that matter. He has, as I conceive, an interest in it as the representative of his testator’s personal estate, which being liable to make up, for satisfaction of the decree, any inadequacy of the proceeds of the sale, must be prejudiced by a sacrifice of the land. Another fatal error in the proceedings subsequent to the interlocutory decree is, that the appellant is personally subjected to the payment of the balance found against his testator, upon an account of his administration not warranted by the pleadings in the cause. The effect of a revival of the suit as to him, if it had been regularly made (though there seems to have been no order of revival against, nor process of revival executed upon him), would have been only to authorize a decree against him de honis testatoris, for the balance ascertained against his testator, and not a de *43 cree against him personally on the ground that he had wasted or failed to account for, or had in his hands, assets of his testator, without giving him an opportunity of being heard on that subject, in answer to a bill with proper averments; and upon the filing of such a bill, a sale of the land ought to be suspended, until the result of a settlement of the administration accounts should shew whether that property could not be relieved by the application of the personal assets to any balance in favour of the defendant.
My opinion therefore is, that the decrees of 1825 and 1829, and all proceedings under them, should be reversed and annulled, and the cause remanded in order to be proceeded in according to the principles above indicated.
Allen, J. concurred.
Brooke, J.
There certainly is an important difference between an interlocutory and a final decree; it needs no ghost to tell us that: but what that difference is, is the question. I think a decree which settles all matters in controversy in the pleadings, and gives the costs, is a final decree. Any thing else which is necessary to execute the decree does not change its character : it may be necessary to come back to the court for its order, to perfect the execution of the decree, but that does not affect its finality. The case of Harvey & wife v. Branson, 1 Leigh 108. was a case in which a commissioner was appointed by the court to sell the unsold lands &c. and leave was reserved to the parties, at any time whatever, to apply to the court to supersede the appointment of the commissioner to make sale of the lands, or to appoint any other commissioner or commissioners to act with or succeed him, or to have the unsold lands divided among the parties: manifestly leaving much more to be done by the court in the execution of the *44 decree, than in the case before us. In all cases, whether the decree be interlocutory or final, the parties have always a right to the aid of the court to carry its decree into effect, whether liberty to apply to the court be reserved or not, unless where the decree is regularly fulfilled in all its provisions. In the case cited I said, that I concurred in the opinion that the decree was final and conclusive as to all the cases (for there were three) as well upon the former decisions of this court on like questions, as upon principle; that I considered the case of Sheppard v. Starke as in point; that the court there must have regarded the decree as final, else it could not have entertained the bill of review as regular and proper. As to the reservations in the decree, those and all similar reservations, in my view, were simply in execution of the decree. That case I think much stronger in the interlocutory features of it than the case before us; unless indeed, as seems to be supposed, errors in a decree make it interlocutory. If so, there are few decrees w’hich come before this court, that are not interlocutory, though treated as final.
The great injury to the public in considering such decrees as the one before us to be interlocutory, consists in almost forbidding persons to purchase property under them, and in lessening the value of such property. The legislature has wisely limited appeals from final decrees to a shorter period than writs of error and supersedeas in the case of judgments at law; and I think, where property is sold under interlocutory decrees, the time ought to be as short as in the case of final decrees ; for if they are left open for almost an indefinite time (as in the present state of the delays in court) the lite pendente purchaser must be in a very precarious state as to his purchases.
I know that decrees for the forelosure of mortgages, in which a sale of land was directed, have been held, upon very early authority in this court, to be interlocu *45 tory. They are not so held in the supreme court of the United States ; and in other cases in that court, decrees for the sale of property have not been held to be interlocutory, but final. But the case of Hill’s ex’or v. Fox’s adm’r is relied on as shewing that every decree which is to be enforced by attachment is interlocutory. In that case, I concurred in the result of the opinion delivered by the president, that the decree was interlocutory, but certainly not on the ground that it was to be enforced by attachment, as said by the president; because all decrees must be enforced by attachment when any party is in contempt of the court, and this necessity is most frequent in cases of final decrees. In that case, the decree was in many respects interlocutory, as may be seen by referring to it.
It is said that the decree before us is interlocutory, because the chancellor failed to appoint any one to divide the funds of the partnership. But the decree was that they should be divided; and if the parties disagreed as to the division, and failed to fulfil the decree in that respect, it was the common case of a failure, which was to be remedied by an order of the chancellor. As to the defect in the decree in not directing the marshal to convey the land, I think the direction to sell implied the power to convey; but if not, it was an error in the decree which did not change its character. I am of opinion that the chancellor might at any time have directed the conveyance to be made, it being in execution of the decree to sell.
I. think, however, that there was no power to convey title to land in a foreign state, by virtue of our law's, by the appointment of a commissioner, and that Gilpin ought to have been decreed to convey the title. In such cases the court can only act on the parties.—But there are many errors in the decree. The only point I mean to decide is, that it is a final and not an interlocutory decree; and as the appeal was allowed after the expi *46 ration of three years, the limitation prescribed by the , , , , , • i act of assembly, it ought to be dismissed.
Cabell, P.
The great question in this case is, whethej. decree of the 26th of March 1825 be final or interlocutory.
In determining this question, we must be guided by the decisions of our own court, rather than those of England or of the United States, or of our sister states.
I am of opinion that the decree is interlocutory.
In Harvey & wife v. Branson, 1 Leigh 108. judge Carr said: “All decrees are either interlocutory or final. There is no middle class. In the progress of a cause, it often becomes necessary to make orders of different kinds, in order to enable the court to come at the whole case, or to settle the details after the principles of the cause are decided. All these are interlocutory orders or decrees. But when a decree makes an end of a case, and decides the whole matter in controversy, costs and all, leaving nothing farther for the court to do, it is certainly a final decree.”
Let us try this case by this test.
This suit was brought by Cocke against Gilpin for the purpose of settling a mercantile partnership which had existed between them, and for the farther purpose of recovering from Gilpin a part of a tract of land in Kentucky, which Gilpin had purchased with the funds of the copartnership, and for which he had taken a conveyance in his own name. In the progress of the cause, the accounts between the parties were settled, and a balance having been found due from Cocke to Gilpin of 5701 dollars 39 cents, with interest on 3361 dollars 70 cents, part thereof, from the 31st day of December 1822 till paid, Cocke was directed to pay the same accordingly; and the chancellor being of opinion that the land was partnership property, the decree went on to direct, that on Cocke’s making the payment aforesaid, Gilpin *47 should convey to Cocke one equal moiety of the Kentucky land.
Let us pause here, and apply judge Carr's test to this portion of the decree; premising that the character of a decree, as interlocutory or final, is to be determined by the terms and provisions of the decree itself, and not by matters dehors the decree, or by matters occurring or appearing subsequent to it. This principle was laid down by judge Tucker, delivering the opinion of the court, in Hill's ex'or v. Fox's adm'r, 10 Leigh 587.
There is nothing in the decree which shews the value of the Kentucky land. A moiety of it, for aught that appears in the decree, may have been of far greater value than the amount of money due from Cocke. Indeed the decree itself, in a subsequent part of it, directing a sale, contemplates the possibility of a moiety of the land selling for more than that amount, and directs the excess to be paid to Cocke. But however that might be, Cocke undoubtedly had a right to pay the money, and to demand from Gilpin a conveyance of the moiety of the land, whatever might be its value. Suppose he had done so, and that Gilpin had refused to make the conveyance: how could obedience to this part of the decree be enforced ? Certainly by no other means than by an attachment, which could not issue but on the order of the court. And this proves the decree to be interlocutory. The case of Hill’s ex'or v. Fox's adm'r, just cited, is a direct authority to this point. The material question in that case was as to the character of the decree. Indeed all the other questions depended upon the solution of that. The opinion of the court was delivered by judge Tucker; and it is so lucid and strong, and at the same time so applicable in several respects to the case before us, that I beg leave to insert the following passages from it. “It is,” says the judge, “a decree, indeed, against Nathaniel Fox for a sum of money; but it farther provides that if no property of his *48 can be found, then he shall deliver up certain trust and mortgage property to the marshal, to be sold to satisfy the plaintiff’s demand. If the debt was not paid by execution, this part of the decree came into operation ; and as it could only be enforced by attachment, if obedience to it were refused, so it seems to me obviously to be without the provisions of either of the clauses of the statute.” (The judge alludes here to the 4th and 17th sections of the 128th chapter of the revised code; one of the questions in that case being, whether a final decree in a court of equity is a judgment, within the meaning of those sections.) The judge proceeds: “ Had the creditor found it necessary to proceed to enforce this provision of the decree,.it could only be done by attachment against Fox in his lifetime, or by bill demanding from his representatives, or others in possession of the property, a compliance with the decree, and enforcing it against them by attachment. It is true, this course has not been taken, the creditor still insisting that there are assets. But the provision itself gives the character to the decree; for the cause never could be out of the possession of the court, so long as its direct action might be called for to compel the delivery of the property.”
If the decision in Hill’s ex’or v. Fox’s adm’r be law, it is absolutely decisive of the case before us. The provision in this case, that in a certain event Gilpin should convey the land to Codee, is similar to the provision in Hill’s ex’or v. Fox’s adm’r, that in a certain event Fox should deliver the property to the marshal. It could only be enforced by attachment, which could not be obtained but by application to the court, and by shewing that the event had happened on which the deed was to be made : and in the emphatic language of the opinion of the judge, “ the cause never could be said to be out of the possession of the court, so long as its direct action might be called for to compel” the conveyance of the land.
*49 If it be objected that the provision for the conveyance of the land by Gilpin has become inoperative by the failure of Cocke to perform the precedent condition (the payment of the money), I answer, in the language of the opinion, that “ the provision itself gives the character to the decree,” and shews it to be interlocutory.
If it be said that in that case the marshal, to whom the property wras to be delivered for sale, was to report his proceedings to the court, I answer, that no regard whatever was paid to that circumstance, and that the decision is founded exclusively upon the circumstance that obedience to the decree could be enforced only by attachment.
I would farther remark that the case of Hill’s ex’or v. Fox’s adm’r is among the latest that have been decided on this subject, and is long subsequent to that of Harvey & wife v. Branson, on which the counsel for the appellee so strongly relied, but which, I shall hereafter endeavour to shew, is quite distinguishable from this.
I conclude, therefore, that that part of the decree on which I have commented is interlocutory in its character.
But let us proceed to other parts of the decree.
It next directs that if Cocke shall not, within six months, pay to Gilpin the sum of money with interest decreed against him, the marshal of the court, after having advertised the time and place of sale for six wmeks in some one of the newspapers published in the city of Richmond, shall expose to sale at public auction to the highest bidder, for cash, one equal but undivided moiety of the Kentucky land, and out of the proceeds of sale, after defraying the expenses attending the same, shall pay to Gilpin the sum of money with interest as aforesaid, and the residue, if any, shall pay to the plaintiff Cocke. Now it is obvious that this decree for the payment of money, and, in default of such payment, for the sale of land and for the application of the pro *50 ceeds of sale to the payment of the debt, is precisely such a decree as is usually entered in a suit to foreclose a mortgage. And I think I may affirm, without the hazard of contradiction, that there is not a single case withjn t|ie ]as£ forty yearS) jn which such a decree has been held to be other than interlocutory. It is true that in most, perhaps in all such cases, there is a direction to the marshal to report his proceedings; thus shewing in express terms that the court contemplated future action in the case. But I do not think that that circumstance has ever been regarded as necessary to the interlocutory character of the decree in such cases. On the contrary, the necessity and intention of future action on the part of the court, and consequently the interlocutory character of the decree, results also from the nature of other provisions of the decree. The court ought not to give to the marshal an unlimited power of sale, beyond the .control of the court itself in the very cause. It ought to retain the power of supervising, and of affirming or nullifying his acts. As the officer of the court, it is his duty to report to the court how he has executed its decree, whether he is ordered to report or not. We ought not to infer, from the mere absence of an order to report, that the court intended to confer on the marshal an unlimited and uncontrollable discretion, for the abuse of which the parties would be without redress, save only by a new suit, or by appeal to this court.
Besides, the marshal is directed “ to expose to sale,” not to conveij the land. To “ expose to sale” is one thing; to transfer and convey the title is another. The former may safely be confided to the marshal; the latter should be directed by the court, after it has affirmed the sale. And such, I believe, has been the general if not the universal practice, except perhaps in a single case, which will be hereafter noticed. Even in England, a decree for the sale of land is not regarded as final until the confirmation of the sale by the court; as is abun *51 dantly shewn by the authorities which my brother Baldwin has referred to, and which I need not repeat. J am therefore of opinion that this part of the decree also (as to the sale of the land) is interlocutory.
Another part of the decree directs that the outstanding debts of the firm shall be divided between the parties to the concern. Can it be believed that the court intended this part of the decree to be final ? The evidences of the debts, it is to be presumed, were in the hands of Gilpin ; since he had been entrusted with their settlement and collection. Did the court mean to give to him, one of the parties interested, the same unlimited power as to the division of the debts, as has been claimed for the marshal in relation to the sale of the land ? This can hardly be pretended. And if he was not to divide them, who was ? Nobody is mentioned in the decree. This part of the decree, then, can only be regarded as an expression of opinion on the part of the court, as to what ought, to be done with the outstanding debts ; as a declaration or settlement of one of the principles of the case; leaving for adjudication, in some future stage of the cause, the manner in which that principle should be carried out.
It is apparent then, from every part of this decree, that the convenience and interest of the parties, and the very justice of the case, required the future action of the same court which pronounced it. Why should we deprive that court of the power of this necessary action, by pronouncing the decree final and not interlocutory ? It is said that that court intended, by the decree which it pronounced, to make an end of the cause, and to put the parties out of court. If that was the intention of the court, we might be compelled to regard the decree as final. But where is the evidence of such intention ? I think I may say confidently that no such intention is expressed. What are the circumstances from which it may be inferred ? I am unable to perceive any *52 thing in the decree which can serve as a ground for such inference, except the circumstances that costs are decreed, and that the court has failed to direct the marshal to report his proceedings. Now, as to the decreeing of C0StSj although that circumstance may be taken into consideration in aid of other matters, in determining the character of a decree, yet it is manifest that it is entitled to but little weight, and is very far from being conclusive. In the case of Hill’s ex’or v. Fox’s adm’r, the decree was held to be interlocutory, although the costs were decreed. So also in Mackey v. Bell, 2 Munf. 523. and probably in many others.
As to the failure to direct the marshal to report: Although the order to report would be conclusive evidence of an intention in the court to take future action in thé case, yet it does not follow that the omission to make such an order is evidence of intention not to proceed farther in the cause. The omission may have proceeded from mere inadvertence on the part of the court ,* or from the reflection that the marshal would be bound to report, although the decree contained no positive order. Look at the inconvenience which might result to the parties. The marshal may abuse the authority,committed to him, and may make a sale which justice to all parties would imperiously require to be set aside. Yet if the decree be final, that measure of justice could only be effected by an appeal to this court, or by a new suit brought for the purpose. I cannot impute such gross error to the court below, on mere inference.
I have a word only as to Harvey & wife v. Branson. I have no doubt of the correctness of the decision ; but it has no application to this case. In addition to the particular circumstances mentioned by judge Balclwin, the express reservation of liberty to the parties to apply to the court to supersede the commissioner, &c. proves that the court intended to put an end to that cause, and to put the parties out of court, by pronouncing a final *53 decree; for, as judge Carr said, “ if the case was still pending and the parties in court, what need could there be of leave to the parties to apply to the court ?” This circumstance, to say nothing ot other matters, distinguishes that case from this ; and this circumstance will justify the remark of judge Carr, that the power to sell included the power to convey. The remark is true as applied to that case; but I am not prepared to assent to it as a general proposition. The court has the power to make that a final decree, which might otherwise be merely interlocutory.
Upon the whole, I am clearly of opinion that the decree of the 26th of March 1825 was only interlocutory. And this opens the door to an examination of the alleged improprieties of that decree. As to them, I concur in the opinion delivered by judge Baldwin.