FAYETTE I. FOSS v. LORENZO MARR ET AL.

FILED MAY 15, 1894.   No. 5601.

1. **Replevin**: FINDINGS: REVIEW. An action of replevin was commenced in the district court and the property taken under the writ and delivered to the plaintiff. The parties to the action waived a jury and submitted the case to the court for decision upon a stipulated statement of the facts. The court made a general finding for defendants, containing no valuation of the property, and rendered a judgment for money only, based upon such finding. *Held*, That both finding and judgment were erroneous, to such an extent as to call for a reversal of the case.

2. **Mortgages**: FORECLOSURE: GROWING CROPS. A matured crop of corn standing ungathered upon land sold at judicial sale, which was not considered or taken into account by the appraisers in arriving at the value of the premises sold, did not pass to the purchaser at the judicial sale, but remained the property of the mortgagor who had planted and cultivated it.

ERROR from the district court of Hitchcock county. Tried below before WELTY, J.

*W. H. Morris*, for plaintiff in error.

*House & Blackledge, contra.*

HARRISON, J.

November 4, 1891, F. I. Foss commenced an action of replevin in the district court of Hitchcock county, Nebraska, to recover, as is stated in the petition, "all corn now standing and growing, and all corn now in crib or lying in piles, upon the following described real estate, to-wit: The southeast quarter of section 4, and the northwest quarter and southeast quarter and the north half of the southwest quarter of section 3, all in township 3 north, of range 31 west of the 6th P. M., in Hitchcock county, Nebraska, of the value of $800." Writ was issued, the property taken and bond given, and the property was delivered to plaintiff. Issue being duly joined in the case, a jury was waived and a stipulated statement of the facts filed and the case submitted to the judge of the court for decision and judgment. The stipulation of submission is as follows: "It is hereby stipulated by and between the parties that should the court desire to take this cause under advisement, the bill of exceptions herein shall be signed, and the motion for new trial, by the parties filed herein, shall be taken and deemed as filed of this term; and the decision of the court, when rendered, shall be decreed as rendered of this term, and that the exceptions of the parties hereto shall be entered, and that all the time that would be to each party, if said judgment was rendered at this term, shall be saved to the several parties herein, and all things done within the time required by law shall be deemed and filed as if done at this term." The plaintiff's motion for a new trial was afterwards overruled, as appears by the record, and judgment rendered as follows: "March 23, 1892. Trial to the court upon the petition, answer, and the stipulation of the parties to the action. The court finds for the defendants. It is

therefore considered by· the court that the defendants re-
·cover from the plaintiff the sum of $325." The plaintiff
brings the case to this court by petition in error for the
purpose of reviewing the decision and judgment of the
lower court.

It will be better here to give a statement of some facts re-
garding prior actions and transactions by and between some
of the parties to this suit which led up to and finally culmi-
nated in this action. Lorenzo and Rebecca Marr, of defend-
·ants, were husband and wife, and in 1888 Lorenzo was the
owner of the lands hereinbefore described, and he and his
wife borrowed some $3,300 of the Massachusetts Mutual
Life Insurance Company and gave a mortgage on the land
to secure the note evidencing the loan, and executed and
·delivered to Dawes & Foss, a firm of which plaintiff was
a member, a second mortgage on the same lands for the
sum of $700. Default was made in the payment of this
second mortgage, and proceedings were commenced to
foreclose it. A decree was rendered November 11, 1889.
The decree was stayed by defendants' request for the statu-
tory period, then order of sale issued, and was delivered to
the sheriff, of date October 2, 1890. February 2, 1891, the
real estate was sold subject to the mortgage of the life in-
surance company and tax liens, the plaintiff herein being
the purchaser. September 21, 1891, the sale was duly con-
firmed, and on October 20, 1891, the sheriff made and de-
livered to F. I. Foss, the purchaser, a deed for the prem-
ises, and, in obedience to an order of the court, put him in
possession of the lands. During the year 1891, and after
the sale, which was of date February 2, 1891, Lorenzo
Marr cultivated the farming lands and planted thereon
wheat, oats, flax and corn, and gathered of these crops all
the wheat, oats, and flax, and a portion of the corn. When
the sale was confirmed there was standing in the field,
matured, but ungathered and unsevered from the soil, some
corn, being the same corn in controversy in this action,

40

which was gathered by defendants after the confirmation of the sale and possession of the lands by plaintiff, defendants then entering and going upon the premises for such purpose.

The first assignment of error which is argued by counsel for plaintiff in error is that the finding of the court and its judgment entered thereon is contrary to law. This is an action of replevin, and the record shows that the property in controversy was taken under the writ of replevin and delivered to plaintiff. Where such a state of facts exists in an action, and the jury or court finds for defendant, as did the court in this case, and renders judgment, it must, in its finding, assess the value of the property, or, if the defendant's interest is special, the value of such interest, and the judgment based upon such verdict or finding must, be in the alternative, for the return of the property, or its value in case a return cannot be had. Sections 190, 191, and 191a of our Code of Civil Procedure applicable to finding or verdict and judgment for defendant in a suit of replevin are as follows:

"Sec. 190. If the property has been delivered to the plaintiff, and judgment be rendered against him on demurrer, or if he otherwise fail to prosecute his action to final judgment, the court shall, on application of the defendant or his attorney, impanel a jury to inquire into the right of property and right of possession of the defendant to the property taken. If the jury shall be satisfied that said property was the property of the defendant at the commencement of the action, or if they shall find that the defendant was entitled to the possession only of the same at such time, then, and in either case, they shall assess such damages for the defendant as are right and proper; for which, with costs of suit, the court shall render judgment for the defendant.

"Sec. 191. In all cases, when the property has been delivered to the plaintiff, where the jury shall find upon is-

sue joined, for the defendant, they shall also find whether
the defendant had the right of property, or the right of
possession only, at the commencement of the suit; and if
they find either in his favor, they shall assess such dam-
ages as they think right and proper for the defendant; for
which, with costs of suit, the court shall render judgment
for the defendant.

"Sec. 191a. The judgment in the cases mentioned in
sections one hundred and ninety and one hundred and
ninety-one, and in section one thousand and forty-one of
said Code, shall be for a return of the property, or the
value thereof in case a return cannot be had, or the value
of the possession of the same, and for damages for with-
holding said property, and costs of suit."

It has been held, referring to section 191a, in *Manker v.
Sine*, 35 Neb., 746: "In an action of replevin, where the
property has been delivered to the plaintiff, in case a ver-
dict is returned in favor of the defendant, the judgment
must be in the alternative, for a return of the property, or
the value thereof in case a return cannot be had, or the
value of the possession of the same, and for damages for
the unlawful detention. The statute requiring the judg-
ment to be in the alternative form is imperative;" and in
the body of the opinion the writer thereof states: "The
judgment is erroneous, because it was rendered for money
absolutely, and was not in the alternative, for a return of
the property, or the value thereof in case a return could
not be had, as required by section 191a of the Code. The
statute is imperative, that where the property has been
delivered to the plaintiff in replevin, in case a verdict is
returned for the defendant, the judgment must be for the
return of the property, or its value in case it cannot be
returned, or the value of the defendant's possession. This
statutory provision is mandatory. (*Hooker v. Hammill*, 7
Neb., 231; *Lee v. Hastings*, 13 Neb., 508.) In the last
case cited there was a stipulation that the property could

not be returned, and yet the court held that it did not preclude the necessity of an alternative judgment." The finding of the court in this case (above quoted), it will be remembered, was merely a general one in favor of defendants, without specifying what issues the court determined in their behalf, or assessing any damages, or the value of the corn, which should have been incorporated in the finding or verdict in the case, and the judgment is a money judgment in the sum of $325, with no finding to found it upon, when, by an imperative and mandatory·requirement of our Code, it should have been an alternative one, for the return of the corn to defendants, or payment of its value.    This was clearly such error as to call for a reversal of the case.

The only other question in the case is: The land having been sold under decree of foreclosure, and the sheriff having executed and delivered to the purchaser at such sale a deed and put him in possession of the premises, who was then entitled to the corn standing in the field unharvested or not "husked," the purchaser or the mortgagor?   It being further agreed as a fact in the case, "if considered material," that the corn was not taken into consideration by the appraisers when the appraisement of the premises was made prior to the sale.   The courts of last resort in the greater number of the states in the Union have established by decisions that the purchaser of lands at a mortgage foreclosure sale is entitled, as against the mortgagor of the premises, to all crops growing upon the lands at the time of sale, or, in some cases, at the time of the execution of the deed by the sheriff.   The courts of some of the states have announced a different and opposite rule; *i. e.*, that growing crops do not pass to the purchaser at a judicial sale; Ohio and Pennsylvania having adhered to this latter doctrine.   The case of *Crews v. Pendleton*, 1 Leigh [Va.], 297, s. c., 19 Am. Dec., 750, is a typical case of the former kind or class, and therein it is stated: "The

contract between the mortgagor and mortgagees is, in effect, this: 'I convey you my land, slaves, etc., as a security for the debts I owe you.   I bind myself to pay you those debts by a given time, and if I fail, you may proceed to get a decree for the sale of the subject; meantime I remain in possession, use the slaves, and take the profits of the land; but when you get a decree, you may immediately sell everything.'   Under this agreement, if the mortgagor goes on and makes preparation for a crop, he does it with a full knowledge that the land with the crop is subject to be sold if the decree be obtained before he severs it.   Nor does he lose anything by this; for the crop on the land enhances the price.   If by this increase the debt be overpaid, he gets the surplus; if not, still the full value of his labor goes (as he had agreed it should go) to the payment of the debt secured by the mortgage."   "This," says a writer of an article on this subject in 19 American Law Review, 25, referring to the above excerpt from the Virginia case, "is the view taken by all the cases; and it may be added that in awarding the crop to the mortgagee, the law simply dispenses with a resort on his part to a judgment at law to reach the crop for the satisfaction of the debt, and that in a case where, by yielding up his lands to satisfy the debt, the mortgagor admits it to be due."   I have copied this much of the article to show that the reasoning upon which the prevalent rule is founded is not applicable to the facts as stipulated in the case at bar, for, it will be remembered, it was agreed as one of the facts to be considered by the court, if material, that the corn was not valued with and as a part of the land by the appraisers, hence it did not enhance the value of the land, or enlarge the purchase price, and the mortgagor did not derive any benefit from it.   In the Ohio case (*Cassilly v. Rhodes*, 12 O., 88) it is said: "This reasoning does not apply to judicial sales when conducted under our system of appraisements.   The principle which now extends to personalty as well as to lands is that the

subject of sale should be appraised and not sold, except at a price bearing some proportion to its value; but where lands are valued for judicial sales, the value of the annual crops is not included in the estimate. Yet, if the crops passed, the purchaser would acquire property which had not been subjected to appraisal, and thus defeat the system of policy intended for the debtor's protection. The debtor's rights, therefore, can be saved only by regarding the annual crops as personalty, requiring a separate levy. The case of *Beggs v. Thompson*, 2 O., 105, although decided on other grounds, adopts these premises, and barely abstains from expressing this result."

From this last quotation it will be readily perceived that the reasoning in the Ohio case is very apt and pertinent to the facts in the case at bar. It must further be borne in mind that the crop in this case, corn, was not a growing crop, but had fully matured and was only awaiting the hand of the husbandman to gather it, and there was surely no hardship imposed upon the purchaser in allowing the mortgagor ingress and egress of the land to remove it. *Hecht v. Dettman*, 41 Am. Rep., 131, 56 Ia., 679, was an action of replevin to recover some barley, cut and in shocks, and oats partly threshed and partly in bundles or sheaves, all upon the premises where it was grown. The defendant was a tenant of the owner of the land, who had mortgaged it to certain parties, and among them, the plaintiff in the replevin case. After defendant had rented the land, the plaintiff foreclosed his mortgage and at the sale of the land became purchaser of the premises, and on the 7th of the month of July received a sheriff's deed of the property. At the time the deed was delivered to the plaintiff the grain in controversy in the replevin case was not cut, but it was matured and fit for harvesting prior to that time. The jury were instructed that the title of the grain passed to plaintiff by the sheriff's deed, and the court instructed them to return a verdict for the plaintiff; and on

an appeal of this and another case presented together, being between the same parties, on the same facts and rules of law, the supreme court, by Beck, J., said: "The sheriff's deed executed upon the foreclosure sale vested plaintiff with the title of the land, and the right to all growing crops followed the title thus acquired. (*Downard v. Groff*, 40 Ia., 597.)" This rule, we think, is not applicable to grain which has matured and is ready for the harvest. It then possesses the character of personal chattels and is not to be regarded as a part of the realty. (See 1 Schouler, Personal Property, 125, 126; Bingham, Sales of Real Property, 180, 181.) The conclusion is well supported upon the following reasons: "The grain being mature, the course of vegetation has ceased and the soil is no longer necessary for its existence. The connection between the grain and ground has changed. The grain no longer demands nurture from the soil. The ground now performs no other office than affording a resting place for the grain. It has the same relations to the grain that the warehouse has to the threshed grain, or the field has to the stacks of grain thereon. It will not be denied that when the grain is cut it ceases to be a part of the realty. The act of cutting, it is true, appears to sever the straw from the land, but it is demanded by the condition of the grain. It is no longer growing. It is no longer living blades which require the nourishment of the soil for its existence and development. It is changed in its nature, from growing blades of barley or oats to grain mature and ready for the reaper. Now, the mature grain is not regarded by the law, like the growing blades, as a part of the realty, but as grain in a condition of separation from the soil. Suppose the defendant had cut a part of the seventy-two acres of grain in controversy. The grain so cut, it will not be denied, would not have passed to plaintiff. There is no valid reason why the act of cutting should change the property in the grain. The work required time, and therefore

plaintiff loses a part of his property. All of the grain is·
in the same condition,—all ready for the reaper. The part
cut is his property, while the part uncut belongs to the land-
owner. We think the ownership of the grain should be
determined by its condition, not by the act of cutting, which
cannot be done as soon as it is demanded by its condition.
We conclude that for the reason the grain was mature and
was uncut because defendant had been unable to do the·
work, it cannot be regarded as part of the realty which·
passed with the deed to plaintiff;" and on rehearing this·
opinion was adhered to.

In the state of Iowa the law provides for a definite·
period of time between the sale of the land in fore-
closure proceedings and the time of the issuance of the·
deed, which is called a time of redemption. In this
state we have no such statute and no such time of re-
demption. In Iowa the party occupying the land has
positive and definite information of the date when his·
occupancy will terminate and must cease, and hence
has less warrant or excuse for sowing or planting a
crop, which to mature and harvest may require until be-·
yond such date, than does a person occupying a farm in
this state, upon which foreclosure proceedings have been
commenced, where the termination of the occupancy can-·
not be ascertained or calculated, or even approximated, with
any reasonable degree of certainty. We are satisfied that
in this case, the facts agreed to by the parties disclosing
that the corn was fully ripened and matured and partly
husked, and further, that it was not considered by the ap-
praisers in valuing the farm for the purposes of the sale,.
the defendants did not receive the benefits of it in such
sale. It was not taken or was not sold as a part of the·
realty ; was not used to, or did not have the effect of en-
hancing the value of the farm, or increasing the price re-
ceived for it; and the defendants not having, in such sale,
received the benefit of their outlay of money, bone and

sinew, or labor, it was but just and fair to allow them the corn, and that on this branch of the case the decision of the lower court was right.

A consideration of the question, generally, of who is entitled to a crop growing upon the lands sold at judicial sale, the purchaser or the owner, or parties holding under him, and a determination of the same and an announcement of the rule of law to govern in cases presenting the above question, is not deemed necessary to a discussion and decision of the case at bar upon its state of facts; hence it is not herein raised or decided. For the reason of the error in rendering judgment the same must be reversed and the cause remanded.

REVERSED AND REMANDED.