VALENTINE T. TAPLEY *et al.*, ADMINISTRATORS OF JOSEPH D. TAPLEY, Plaintiffs in Error, *v.* ABRAHAM McPIKE, Defendant in Error.

1. *Limitations, statute of— When it begins to run — Incapacity, period of, excluded.*— The cause of action arises as soon as the party has a right to apply to the proper tribunal for address; but when there is a temporary incapacity to sue, growing out of some particular provision of a statute, the time of such disability should be excluded from the computation.

2. *Limitations, statute of — Administrator — Heirs and distributees — Adverse title.*— When the administrator purchases or acquires title to property of an estate, and afterwards, with the knowledge of the heirs, notoriously asserts title in himself and claims adversely to the estate, he may avail himself of the statute of limitations against the heirs, and in the same manner against the distributees, from the date of final settlement and order of distribution.

3. *Limitations, statute of— Wills — Court, County — Court, Circuit—When it begins to run.*— The law allows five years wherein to contest a will in the Circuit Court, and until that time has passed, the rights under the will are not finally settled, though it is probated in the County Court; and until after that time the statute of limitations does not begin to run against the heirs.

4. *Partition, decree of — Adverse title —Estoppel.*—A decree in partition does not estop the parties to the suit from setting up a new and independent title afterwards acquired; it only affects the title they then had.

5. *Administrators — Acts of, in good faith — Revocation of authority.*— The lawful acts of administrators, done in good faith, shall not be impeached by any will appearing, nor by any subsequent revocation or superseding of their authority.

6. *Court, County — Order of distribution — Innocent purchaser.*— In a matter of distribution, the judgment of a County Court, while unreversed, will protect an innocent purchaser or a stranger buying property under it. (Castleman v. Relf, *ante*, p. 583.)

*Error to Macon Circuit Court.*

*Henderson & Hayden,* for plaintiffs in error.

I. The probate of the will in the County Court, until reversed, was conclusive upon the whole world. (Trecothick v. Austin, 4 Mason, 21–24.) It is a rule in courts of equity, as well as in courts of law, that the cause of action or suit arises when and as soon as the party has a right to apply to the proper tribunal for relief. (Ang. Lim. 34, 50; Woodbridge v. Bannon, 14 Ohio St. 328; Taylor v. McCrackin, 2 Blackf. 261; Walker v. Hale, 15 Ohio St. 356; 16 Ohio St. 353; 11 Pick. 311.)

II. The judgment of partition under the will was not a bar. That judgment simply ascertained the rights of the distributees under the will. (Gott v. Powell, 41 Mo. 416; 26 Mo. 471; 38 Mo. 107.) The judgment in partition conveyed no greater title than the parties had previous to the partition. After the setting aside of the will, the title acquired thereby was *nil.* (14 Ohio St. 328; Co. Litt. 352 *b.*) Estoppel against estoppel settles the matter at large. (2 Smith's Lead. Cas. 510–579, 676.)

*Harrison & Hall,* for defendant in error.

The judgment of the court making the distribution of the slaves is binding and conclusive upon all the parties to the proceeding. (Pentz v. Kuester, 41 Mo. 450.) The parties to the proceeding, having accepted their respective shares under it, are estopped from setting up a claim at variance with their acceptance. (Pockman *et al.* v. Meatt *et al.*, 49 Mo. 347; Penn *et al.* v. Heisey, 19 Ill. 298.) From the time of the division of the slaves, in 1850, the possession of each party became adverse to all others, and the statute of limitations runs from that time. (Keeton's Heirs v. Keeton's Adm'r, 20 Mo. 538–9; Ang. Lim., §§ 174–6.) The lawful acts of the administrator before the revocation of his letters are binding on the estate. (2 Kent's Com. 413, 526.)

WAGNER, Judge, delivered the opinion of the court.

From the record it appears that one Joseph D. Tapley died in 1846, leaving a will by which he devised all his property to his wife until her marriage ; and in the event of her again marrying, then she was to have one-third of the property absolutely, and the remainder to go to his children. The widow took out letters testamentary and qualified as executrix, and in 1849 she married W. C. Gillespie, who thereupon qualified as administrator *de bonis non* with the will annexed.

In 1850 a proceeding was instituted in the County Court for a partition and distribution of the slaves between the widow and children, all of whom, as well as the administrator, were parties therein.   Under this proceeding a distribution was made, and each of these respective parties took possession of their allotted share.   There was a judgment of the court approving the distribution and allotment in due form.

In 1857 Mrs. Gillespie died, and in the same year a suit was brought to set aside the will, which was successful.   In 1860 the plaintiffs, who were two of the heirs, were appointed administrators of the estate of Tapley, deceased, and in 1863 they brought suit for the value of the slaves which had been given to Mrs. Gillespie in the order of distribution, and which had in 1860 been sold by Gillespie to the defendant.   On these facts the court below gave judgment for the defendant.

One of the points raised in the issues upon the trial was the statute of limitations, and it is now insisted that, as the suit was not commenced within five years after the judgment making the distribution, and Gillespie and his wife took possession of the slaves, the statute furnishes a complete and effectual bar.

The general doctrine as to the statute of limitations is that the cause of action or suit arises when and as soon as the party has a right to apply to the proper tribunal for redress.   But when a temporary incapacity to sue grows out of some particular provision of a statute, the better rule is, we think, that the time during which such temporary disability continues should be excluded from the computation.   It is true that where an administrator

purchases or acquires title to property belonging to an estate, and afterwards, with the knowledge of the heirs, notoriously asserts title in himself and claims adversely to the estate, he may avail himself of the statute of limitations as a protection. (Keeton's Heirs v. Keeton's Adm'r, 20 Mo. 530.) In like manner the statute of limitations runs in favor of an administrator against the distributee of an estate from the date of the final settlement and order of distribution. (The State v. Blackwell, 20 Mo. 97.)

But the principle which upholds the bar of the statute in the cases just adverted to is distinguishable from the case we are now considering. While the will remained in force, the proceedings in the County Court were regular, but they were not final. The law allows five years to contest the validity of a will in a Circuit Court. The contesting of a will in the Circuit Court operates in the nature of an appeal from the probate in the County Court. Till the time has elapsed and gone by for proceedings in the Circuit Court, the will is not conclusively and finally established. Till then the rights of the heirs are not concluded. Their rights may be very different, upon a final adjudication in the Circuit Court, from what they were supposed to be upon an establishment of the will in the County Court. They may acquire independent rights by the final judgment in the Circuit Court, which were not before supposed to have any existence, and I am therefore inclined to the opinion that the statute will not begin to run against them till their right to appear or proceed in the Circuit Court has been lost, or the judgment probating the will has become absolute.

It appears to me that there is no question of estoppel in the case. The heirs did not get as much as the subsequent decision showed they were entitled to, and they did not, by any act of theirs, encourage the other party to do anything to his detriment. Under the judgment they had the right to keep what they got, and more besides.

The decree in partition, ordering a distribution of the slaves, could not bar or estop the heirs from setting up any title to the slaves in controversy, except such as existed in them at the time the decree was rendered. It could not preclude them from asserting a new and independent title subsequently acquired. (Taylor

v. McCrackin, 2 Blackf. 261; Woodbridge v. Banning, 14 Ohio St. 328; 2 Smith's Lead. Cas. 676, notes.)

At the time the slaves were transferred by Gillespie to the defendant, Gillespie was still the administrator, and his letters had not been revoked; and it is the received doctrine, says Kent, "that all sales made in good faith and all lawful acts done by administrators before notice of a will, or by executors or administrators who may be removed or superseded, or become incapable, shall remain valid, and not be impeached on any will appearing, or by any subsequent revocation or superseding of the authority of such executors or administrators." (2 Kent's Com. 413.)

The County Court, in the matter of making the order of distribution, was admittedly acting within the line of its jurisdiction, and its judgment, while unreversed, would amount to a full protection to an innocent purchaser or a stranger buying property under it. (Castleman v. Relf, ante, p. 583.)

But there was an allegation made in the petition, and evidence given on the trial to support it, charging bad faith on the part of Gillespie in disposing of the slaves, and fraud, connivance and combination on the part of the defendant in assisting him to effectuate his purpose. This issue seems to have been ignored by the court in giving its instructions of law for the defendant.

From the view that we have taken of the case, we are of the opinion that the court committed error on the trial, and its judgment will be reversed and the cause remanded. Judge Adams concurs. Judge Bliss absent.