# CASES DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS.

## OCTOBER TERM, 1880.

---

HERMANN A. HAEUSSLER, Respondent, *v.* JOHANNA M. L. SCHEITLIN, Appellant.

### October 26, 1880.

An adjudication of the St. Louis Probate Court in the year 1876, upon the final settlement of an executor, declaring the balance due from him to the estate and making an order of final distribution, was effectual to create a lien upon the real estate of the executor, though not entered upon the abstract of judgments required by law to be kept in the office of the clerk of the Circuit Court.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Affirmed.*

FINKLENBURG & RASSIEUR, for the appellant, cited: Rev. Stats. 1855, p. 1594; Sess. Acts 1865, p. 75; Wag. Stats., p. 109, sect. 13; p. 112, sect. 10; *Dunscomb* v. *Maddox*, 21 Mo. 144.

BROADHEAD, SLAYBACK & HAEUSSLER, for the respondent: The Probate Court is a court of record. — Rev. Stats., sect. 1175. Its judgments are a lien. — Rev. Stats., sect. 2730. The order made in this case was a judgment. — *The*

( 303 )

*State* v. *Holt*, 27 Mo. 340; *Johnson* v. *Beazley*, 65 Mo. 250; *Sheetz* v. *Kirtley*, 62 Mo. 417; *Castleman* v. *Relfe*, 50 Mo. 583; *Tapley* v. *McPike*, 50 Mo. 589.

LEWIS, P. J., delivered the opinion of the court.

The only question in this case is whether an adjudication of the St. Louis Probate Court in the year 1876, upon the final settlement of an executor, declaring the balance due from him to the estate and making an order of final distribution, was effectual to create a lien upon the real estate of the executor, even though not entered upon the abstract of judgments required by law to be kept in the office of the clerk of the Circuit Court.

"An act to establish a Land Court in St. Louis County, and for other purposes," approved December 12, 1855, provided as follows : —

" Sect. 13. No judgment hereafter rendered by any court in St. Louis County shall be a lien on real estate until an abstract of said judgment shall be entered in a book to be kept by the clerk of said Land Court," etc.

" Sect. 14. It shall be the duty of each of the clerks of all courts of record in said county, within five days after the rendition of any final judgment in their respective courts, * * * to furnish an abstract thereof, as aforesaid, to the clerk of said Land Court, who shall immediately, upon the same day, enter the same on his abstract," etc. Rev. Stats. 1855, p. 1594.

By " An act to provide for the reorganization of the St. Louis Circuit Court, and regulate proceedings therein," approved December 19, 1865, the Land Court, the Court of Common Pleas, and the Law Commissioner's Court were abolished, and their several jurisdictions were vested in the Circuit Court. The twenty-fifth section of this act is as follows : —

" Sect. 25. On and after said day, the clerk of said Circuit Court shall keep in his office the abstract of judgments

theretofore kept by the clerk of the St. Louis Land Court, in pursuance of the "Act to establish a Land Court in St. Louis County, and for other purposes," approved December 12, 1855, and shall enter therein all judgments rendered by said Circuit Court, and shall perform all other duties in relation to said abstract which shall have theretofore been performed by, or incumbent upon the clerk of the said Land Court." Sess. Acts 1865 (Adj. Sess.), p. 75. This is the only provision in the act which makes any reference to the abstract of judgments. By the twenty-sixth section the entire act of December 12, 1855, establishing the Land Court is repealed. It results that the provision which suspends the lien of all judgments until the entry in the abstract-book ceased to be the law when the act of December 19, 1865, went into effect. It is apparent that the reason for that provision as to common-law judgments, with its correlative requirement upon the several clerks to furnish abstracts, no longer existed when the common-law courts of the time were all merged in the several divisions of the Circuit Court, with a single clerk whose duty it was to record in a central office all the judgments that might be rendered. At all events, it is unquestionable that the thirteenth section of the Land Court Act was in fact repealed by the legislation already described. There was, therefore, in 1876 no law which made the force of a judgment lien upon real estate, from whatever court proceeding, conditional upon the filing of an abstract in the office of the clerk of the Circuit Court.

By Wagner's Statutes, p. 709, sect. 2, it is provided that "judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held." That the St. Louis Probate Court is a court of record is not disputed. It remains to be inquired only whether the adjudication under discussion was a judgment within the meaning of the statutory provision last quoted.

Our Supreme Court has in so many instances assigned to probate adjudications on final settlements an equal dignity with that of Circuit Court judgments, that there seems to remain no excuse for excluding them from a statutory reference to judgments in general. It is held that they cannot be impeached unless for fraud, and in a direct proceeding, such as would be necessary in the case of a common-law judgment. *Sullivan* v. *Burgess*, 37 Mo. 300; *Picot* v. *Bates*, 47 Mo. 390; *Lewis* v. *Williams*, 54 Mo. 200; *Sheetz* v. *Kirtley*, 62 Mo. 417. An order of distribution made by a County Court in the exercise of its probate jurisdiction will, while unreversed, protect an innocent purchaser or a stranger buying property under it. *Tapley* v. *McPike*, 50 Mo. 589. It will be difficult to find a reason why that which is a judgment to such sturdy intents as these may not also be a judgment for a purpose which simply adds an ordinary aid to its enforcement and collection.

It is argued that an essential difference between the probate adjudication on a final settlement and the Circuit Court judgment appears in the fact that no execution can issue upon the former until after demand made and an affidavit filed by the distributee. But this proves nothing. Legislative authority might require the same steps to precede the issuing of an execution on a Circuit Court judgment; but such legislation would not convert the judgment into something else, or in any wise impair its dignity and ultimate force.

It is further contended that the adjudication upon a final settlement is directed, not against the executor personally, or his property, but against the assets of the estate remaining in his hands. Such a view might properly apply to the probate allowances in favor of creditors or third persons. There the matter of inquiry lies between the creditor, or third person, and the estate. The executor has no personal interest or responsibility concerning it. But when it comes

to a final settlement, the whole contest, if any, is between the estate and the executor.    The result of the contest, if adverse to him, charges the executor personally.    The court finds that he is indebted to the estate in so much money, and directs that he satisfy the indebtedness by paying over to the distributees named.    The judgment, therefore, is not against the estate, but against the executor.

It may be said that if the judgment lien attaches to the executor's lands in the case of an adjudication upon his final settlement, then the lien must attach in like manner in every case of an allowance against the estate, since these also may, in certain contingencies, be collected by execution against the property of the executor.    Such a conclusion, if legitimate, would doubtless be startling.    But it does not follow at all.    The statute says that the allowance in favor of a creditor " shall have the force and effect of a judgment."    Wag. Stats. 103, sect. 9.    But, clearly, this means the force and effect of a judgment against the estate, and nothing more.    Upon this judgment alone no execution can ever be issued against the executor.    The court must render yet another judgment before the executor becomes individually a party to the proceeding.    It must first be ascertained, upon a settlement with the executor, that there is money of the estate actually in his hands, which may be appropriated to payment of the demand. The court must then order, or adjudge, which is equivalent, that the executor pay the claim, or a specified part thereof.    Wag. Stats. 109, sect. 11.    All this having been done, and the executor failing to pay, the clerk may, upon a proper application by the claimant, issue execution against the executor.    Id., sect. 13.    Thus the face of the judgment undergoes a process of judicial transfer from the estate to the executor.    Whatever may be the effect of the supplemental order, neither lien nor execution can reach the executor's property by virtue of the original judgment alone.    But the judgment or order of distribution upon a

final settlement needs no judicial transfer or supplemental order, because, proceeding from an inquiry into the executor's personal liability, it strikes in the first instance at the executor himself. It begins where the supplemental order, on an allowance, leaves off. Hence, a proper application to the clerk, and not to the court, is all that the law contemplates in order to produce an execution against the executor. Wag. Stats. 112, sect. 10.

A judgment lien, in any case, is nothing more or less than an auxiliary in the collection of the amount due upon the judgment, by execution in the hands of a proper officer. It simply causes the force of the execution to relate back to the date of the judgment. It is therefore not unreasonable to assume that a statute which, in general terms, provides this auxiliary for the enforcement of all judgments of courts of record, means that it shall be applicable to every such judgment for money, whose collection, without any further judicial action, may be enforced by execution. Why should any one class of such a series be excepted from the general terms of the provision?

A common-law definition of a judgment is, "the decision or sentence of the law, pronounced by a court or other competent tribunal upon the matter contained in the record." Jac. L. Dic. 3; Bla. Comm. 395. Another, "the conclusion of the law upon the facts found, or admitted by the parties." Tidd's Pr. 930. The probate adjudication we have been considering comes literally within either of these definitions. Our opinion — based, however, on the unanswerable logic of the legal situation rather than upon the definitions — is, that the statutory judgment-lien was effectual in the case before us.

The present conclusion may possibly run counter to long-accustomed impressions of intelligent members of the bar and examiners of titles, upon a question which has never been directly presented to the Supreme Court. But the highest judicial duty is to declare the law as it is found to

be, whatever consequences may threaten. If the law is wrong, the corrective must be applied by the Legislature and not by the courts. As the present case, however, involves a question of title to real estate, the burden is lessened by the consideration that our conclusions herein may be reviewed by the Supreme Court.

The judgment of the Circuit Court is affirmed. Judge HAYDEN concurs ; Judge BAKEWELL gives no opinion.