GEORGE E. ALDRICH V. BANK OF OHIOWA.

FILED MARCH 19, 1902.   NO. 11,203.

Commissioner's opinion, Department No. 2.

**Judicial Sale:** ANNUAL CROPS. Annual crops growing on the land do not pass to the purchaser at judicial sale; and for the purpose of saving the debtor's rights thereto, these annual crops will be regarded as personalty.

ERROR from the district court for Fillmore county. Tried below before HASTINGS, J.   *Affirmed.*

*Charles H.* and *F. W. Sloan,* for plaintiff in error.

*C. A. Fowler, contra.*

OLDHAM, C.

One Nierstheimer owned a farm in Thayer county, Nebraska, of one hundred and sixty acres, upon which George E. Aldrich, the plaintiff in error, had a mortgage. This mortgage was foreclosed by a decree of the district court for Thayer county, in 1897, at the February term thereof. The statutory stay was taken. Nierstheimer, the mortgagor, was in possession of, and was farming, this land and

in the month of September of the year 1897 he planted forty acres of this land to wheat. On November 15, 1897, he gave to the Bank of Ohiowa, the defendant in error, a chattel mortgage on the north one-half of this field of wheat, to secure his note, which he had that day given it for $850. This note was by its terms due in ninety days from its date. This mortgage was duly filed for record and it is stipulated in the record that this note has not been paid. The land was sold under the decree of foreclosure by the sheriff of Thayer county on January 24, 1898, Aldrich being the purchaser. The sale was confirmed and a deed thereon was issued to Aldrich on March 21, 1898, and Aldrich at once took possession of this land and still has the possession. The bank claimed the right to go upon this land and harvest this mortgaged wheat, and demanded of Aldrich that it be permitted to do so. This was refused by Aldrich, who claimed the wheat by reason of his ownership of the land, and harvested and marketed the same; whereupon the bank brought its action against Aldrich for the conversion of the wheat. This action was tried to the district court of Thayer county (a jury being waived), which resulted in a judgment for the bank for the sum of $130.76, the value of the wheat, less the cost of harvesting and marketing, from which judgment Aldrich prosecutes error to this court.

The problem for solution, then, is, who was entitled to this wheat,—the mortgagee or the purchaser of the land at judicial sale? There is no question presented as to the validity of this chattel mortgage in its inception. The property was *in esse,* and the right to mortgage is not questioned; but it is claimed that by the confirmation of the sale the title to the real estate on which the wheat was growing passed to Aldrich and carried with it the wheat. So the ownership of this property is dependent on the question, do crops that are not matured, but growing on the land at the time of the confirmation of the judicial sale, pass to the purchaser of the land, or do they remain the property of him who planted them? Phases of this

question have been passed upon by this court. In *Foss v. Marr*, 40 Nebr., 559, this court held: "A matured crop of corn standing ungathered upon land sold at a judicial sale, which was not considered or taken into account by the appraisers in arriving at the value of the premises sold, did not pass to the purchaser at the judicial sale, but remained the property of the mortgagor who had planted and cultivated it." In *Monday v. O'Neil*, 44 Nebr., 724, the court say: "A tenant for years of mortgaged land planted a crop after the rendition of a decree foreclosing the mortgage, the tenant having been a defendant in the foreclosure suit. The land was sold under the decree and the sale confirmed while the crop was growing and before it matured. The purchaser did not obtain possession of the land, but permitted the tenant to retain possession, merely notifying him that he, the purchaser, would expect from the tenant rent in money or in kind. *Held*, That as between the tenant and purchaser the former was entitled to the crop." In this last case the court did not determine what the rights of the parties would have been had Monday secured possession and evicted O'Neil before the crop matured. But the court in both *Foss v. Marr* and *Monday v. O'Neil* bases its decision on the case of *Cassilly v. Rhodes*, 12 Ohio, 88, and *Houts v. Showalter*, 10 Ohio St., 124. The doctrine of these cases is that annual crops growing on the land do not pass to the purchaser on judicial sale, because in law they are regarded as personalty. We must either accept this classification or reject the doctrine of the Ohio cases absolutely. To reject this would be to overturn *Foss v. Marr* and *Monday v. O'Neil*, which, to the extent they have gone in the application of this doctrine, have become a rule of property in this state; and for this reason we do not feel justified in overthrowing them. This being so, nothing but the other alternative is left to us, which is the acceptance of this classification, and with the Ohio cases hold that the title to the annual crops growing on the lands does not pass to the purchaser on judicial sale, for the reason that the law regards them

as personal property. This being their legal status, the controversy over whether or not they were taken into account by the appraisers becomes immaterial. The appraisers of the land would have no right to appraise the personalty which they may find upon the land. This status of the property also renders the question of possession by the purchaser a plain and reasonable one. It will be conceded that a purchase of real estate would not carry with it the personal property of the vendor. When you buy and receive title to my land, you do not buy my horse, and by the act of buying the land you have acquired no right to the horse. The result would be, and is, the logical sequence of all personal property of whatsoever nature and kind, and hence Aldrich acquired no ownership of this property in controversy by reason of his purchase at judicial sale of the land on which the wheat was growing. Having no ownership, how would the possession of the land give him the right to treat this property as his own and apply it to his own use? Counsel suggest no answer to this question. Nor do we think it could be answered to his advantage. The land passes by a judicial sale to the purchaser, burdened with any and all the rights of other parties, including the mortgagor, that are not inconsistent with, or opposed to, title. Title, and this alone, is all the court gives the purchaser. From this he may, or may not, according to the circumstances of the case, or the rights of others, have the right of possession. But the possession of the purchaser could not by any reason of that act destroy the rights of others, nor justify him in appropriating other people's property; and it would make no difference to whom it belonged, as it did not belong to him.

The law recognizes the necessity of agriculture and favors its promotion, and, as is said in *Houts v. Showalter, supra,* "Under our system, frequent advertisements and offers for sale, and occasionally revaluations are necessary, before a sale can be effected. When an appraisement is made it can not be foreseen when a sale will be effected. It is not for the interest of any party, nor for the public

interest, that the land should thenceforth lie waste; then, there may have been no crop sown or planted." This failure to sow or plant is what the law discourages, and it can only encourage sowing and planting under circumstances like these by assuring a man that if he sow, he shall reap.

The judgment of the court below is right and we recommend that it be affirmed.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.