THE HON. HENRY L. MYERS,
THE HON. ALBERT P. STARK,
THE HON. JOHN A. MATTHEWS,
THE HON. ALBERT J. GALEN,
} Associate Justices.

KESTER, APPELLANT, v. AMON ET AL., RESPONDENTS.

(No. 6,150.)

(Submitted September 21, 1927. Decided November 25, 1927.)

[261 Pac. 288.]

*Conversion — Crops — Real Estate Mortgages — Foreclosure — Rights of Purchaser—Rights of Tenant Raising Crops— Wrongful Occupation—Proper Remedy—Involuntary Trustees—Constructive Trusts.*

Equity—Findings—When Conclusive on Appeal.
   1.   The findings of the district court in an action tried by it without the aid of a jury will not be disturbed on appeal where the testimony is sharply conflicting and they are sustained by substantial evidence.

Real Property—Mortgage Foreclosure Decree Giving Purchaser Immediate Possession—Decree Final, When.
   2.   Where the judgment in foreclosure proceedings decrees that the purchaser at the sale shall have immediate possession of the

81 Mont.—1        (1)

land on production of his certificate of sale, and the mortgagor fails to move for a modification of the decree in that respect, the purchaser's right to immediate possession becomes final as against all persons bound by the decree, whether such provision was rightfully or wrongfully incorporated therein.

Same—Purchaser on Foreclosure Sale Entitled to Possession Leaving Debtor Mere Privilege to Redeem.

3. A purchaser at real estate mortgage foreclosure sale is entitled to immediate possession of the premises as against the judgment debtor and one claiming under him by lease made after the sale, except where the debtor personally occupies the premises as a home for himself and his family; the purchaser becomes the holder of the legal and equitable title and there remains in the judgment debtor the mere personal privilege of redeeming.

Same—Sale of Land Without Reserving Crops—Effect on Right to Crops.

4. Annual crops growing upon land are not part of the land under the statutes of this state, but where the owner of the land sells it with the right of immediate possession in the purchaser and without reserving the crops thereon and the purchaser takes possession before severance, title passes to the crops as well, and this principle is applicable where the land is sold at decretal or execution sale.

Same—Occupant of Land at Time of Sale Cultivating Crops is Owner Thereof, When.

5. Where an occupant of land, be he a purchaser, tenant or mere trespasser, holding it adversely to the owner, plants and cultivates crops, they are his personal property provided he remain in possession until after they are harvested.

Same—When Lessee Tenant and not Cropper—Right to Crops on Sale on Foreclosure.

6. A lessee of farm lands who furnished the seed, planted and cultivated the crop and was required to himself divide it when harvested and to deliver one-fourth thereof to the lessor as rental, was a tenant and not a mere cropper, and the crop was therefore his personal property and did not pass with the sale of the land on mortgage foreclosure.

Same—Crops—Sale of Land on Foreclosure—Failure of Purchaser to Take Possession—Tenant Entitled to Severed Crops—Conversion.

7. A mortgagor of farm land leased it after decree of foreclosure to a tenant on a crop-sharing basis; the latter raised a crop of wheat and the purchaser on decretal sale made demand for possession before the crop had ripened but was refused and did not secure possession until after the crop had been severed. *Held*, in an action in conversion, that mere demand for possession was not equivalent to securing possession, and that in the absence of actual ouster of the tenant, who was holding the land adversely,

4. See 8 R. C. L. 356, 372; 19 R. C. L. 628.

5. Mortgage of land as including crops, see note in L. R. A. 1917C, 40. Right to crops sown or grown by one wrongfully in possession of land as affected by severance, see note in 39 A. L. R. 962.

6. When growing crops pass to purchaser on execution sale of land, see notes in 19 Am. Dec. 752; 131 Am. St. Rep. 622. See, also, 8 R. C. L. 369; 19 R. C. L. 628.

[81 Mont. 1.]

before severance of the crop, the crop was the property of the tenant and not that of plaintiff purchaser.

Same — Foreclosure Sale — Wrongful Occupation of Land by Tenant — Remedy.

8.   Since section 8687, Revised Codes 1921, provides that the detriment caused by the wrongful occupation of land is deemed to be the value of the use of the property for the time of such occupation, an action under it, and not one in conversion to recover a crop grown on land or its value, by a purchaser at foreclosure sale from a tenant alleged to have wrongfully refused to deliver possession on demand, is the proper remedy, the crop or its value including not only the value of the use of the land but also the value of the seed planted and the time and labor of him who plants and cultivates the land.

Same—Wrongful Occupation of Land by Tenant Does not Cause Tenant to Become Involuntary Trustee for Purchaser—Reason.

9.   *Held*, that sections 7886 and 7887, Revised Codes, general in their nature, declaring who are involuntary trustees of things wrongfully detained from their owner or gained through fraud, etc., for the benefit of the person entitled thereto, have no application to a wrongful occupation of land after demand by its owner, but that as to such occupation the provisions of section 8687 are controlling.

Statutory Construction — General and Specific Statutes on Subject — Latter Controlling, When.

10.   Where a statute deals generally with a given subject and a later one makes specific provision relating to a certain phase of that subject inconsistent with the former, the latter is controlling.

Constructive Trusts—Basis is Fraud.

11.   The basis of a constructive trust is fraud, actual or constructive, or the breach of fiduciary relations.

---

[1]   Appeal and Error, 4 **C. J.**, sec. 2855, p. 883, n. 33, p. 884, n. 35.
[2]   Mortgages, 42 **C. J.**, sec. 1924, p. 269, n. 86.
[3]   Mortgages, 42 **C. J.**, sec. 1890, p. 245, n. 85, 86; sec. 1926, p. 270, n. 18, 20; sec. 2080, p. 352, n. 98.
[4]   Crops, 17 **C. J.**, sec. 1, p. 379, n. 5; sec. 7, p. 381, n. 34.   Mortgages, 42 **C. J.**, sec. 1896, p. 250, n. 59.
[5]   Crops, 17 **C. J.**, sec. 7, p. 381, n. 36.
[6]   Crops, 17 **C. J.**, sec. 10, p. 382, n. 43.   Landlord and Tenant, 36 **C. J.**, sec. 1913, p. 682, n. 79, p. 683, n. 86; sec. 1938, p. 698, n. 28.
[7]   Crops, 17 **C. J.**, sec. 7, p. 381, n. 36.   Landlord and Tenant, 36 **C. J.**, sec. 1769, p. 603, n. 17, 18, p. 604, n. 19.   Mortgages, 42 **C. J.**, sec. 1897, p. 252, n. 80; sec. 1925, p. 269, n. 94.
[8]   Use and Occupation, 39 **Cyc.**, p. 852, n. 12, p. 870, n. 49.
[9]   Use and Occupation, 39 **Cyc.**, p. 852, n. 12.
[10]   Mortgages, 42 **C. J.**, sec. 1897, p. 252, n. 80.   Trusts, 39 **Cyc.**, p. 169, n. 11, p. 182, n. 66.

*Appeal from District Court, Pondera County; John J. Greene, Judge.*

---

10.   Creation of constructive trust by fraud, see note in 115 **Am. St. Rep.** 787.   See, also, 26 **R. C. L.** 1232.

ACTION by C. H. Kester against M. A. Amon and others. From a judgment for defendants, plaintiff appeals. Affirmed.

*Mr. Art Jardine,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Arnot & Doyle,* for Respondents, submitted a brief; *Mr. D. W. Doyle,* argued the cause orally; *Mr. C. A. Spaulding,* of Counsel, on Motion for Rehearing.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On motion for a rehearing, the opinion heretofore promulgated is withdrawn, and the following opinion substituted therefor:

In August, 1925, C. H. Kester commenced an action against M. A. Amon, John Bakken and Louis Larson, and in his complaint alleged that the defendants had wrongfully taken from his possession 229 bushels of wheat. He prayed for the return of the wheat or a judgment for the value thereof. Issue being joined, the cause was submitted to the court, sitting without a jury, upon an agreed statement of facts, supplemented by oral testimony on two questions in dispute: (a) As to whether the wheat was ripe and ready to cut at the time it was severed from the land; and (b) as to whether defendant Bakken was in possession of the premises from which the wheat was cut up to the time of the removal of the wheat therefrom.

The agreed statement establishes the following facts: In 1916, defendant Amon and wife mortgaged 320 acres of land in Pondera county as security for the repayment of a loan of $2,000. The mortgage and note thereby secured were assigned to one Antrim, who, on the failure of Amon to pay the note, commenced foreclosure proceedings in the latter part of the year 1924, which proceedings resulted in the entry of a default judgment and decree against Amon and wife, and an order of sale of the premises described, on February 17, 1925. The de-

cree provided that "the purchaser or purchasers, at such sale, be let into possession of said premises, and any of the parties to this action who may be in possession of said premises or any part thereof, and any persons who, since the commencement of this action, have come into possession under them, * * * shall deliver possession thereof to the purchaser or purchasers on production of the said sheriff's certificate of sale for such premises, or any part thereof."

On March 9, 1925, Amon executed to defendant Bakken a written lease of the premises "for the year 1925," providing that Bakken should furnish all seed, labor and machinery for working the land, and as rental deliver one-fourth of all crops to Amon in an elevator at either Pendroy or Valier. The lease was duly recorded, and Bakken took possession of the premises and planted thereon a crop of wheat. He remained in "actual possession" until August 5, 1925, "excepting in so far as such possession may have been changed or affected by the acts and demands" of Kester and his testimony given on the hearing on application for a writ of assistance, hereinafter referred to.

In obedience to the order of sale, the sheriff of Pondera county regularly sold 120 acres of the mortgaged premises to Kester on April 28, 1925, and issued to the purchaser a sheriff's certificate of sale. At the time of the sale there was growing on the tract so sold to Kester a stand of wheat, which thereafter yielded approximately 1,000 bushels of grain.

On April 29, the day following his purchase, Kester went upon the premises and there served upon Amon and wife and upon Bakken written notice of his purchase, produced his sheriff's certificate of sale, and demanded immediate possession of the premises. This demand was refused. Thereafter, on May 13, 1925, Kester applied to the district court for a writ of assistance, and served notice thereof upon Amon and wife and upon Bakken. Amon and wife appeared and contested the issuance of the writ, but Bakken made no appearance, although he testified on the hearing in favor of Amon. After hearing the evidence the district court

denied the application, and thereafter Kester applied to this court for a writ of supervisory control to compel the district court to vacate its order and issue the writ of assistance. After a hearing this court issued the writ applied for, which was served upon the district judge on July 30, who, on August 3, complied therewith by vacating his former order and directing the issuance of a writ of assistance to immediately put Kester in possession of the premises. This writ was issued by the clerk of the court, placed in the hands of the sheriff, and by him served upon Amon, his wife, and Bakken on August 4, at which time the sheriff took possession of the premises and placed an agent in charge to hold possession for Kester, but orally agreed that the Amons and Bakken might occupy the residence on the premises until noon of August 5, 1925.

During the period beginning in the late afternoon of August 3 and ending in the early forenoon of August 4, Bakken cut thirty acres of the wheat standing on the lands purchased by Kester, and thereafter removed the bundles, from which the 229 bushels of grain were threshed, from the land. August 5 Kester demanded of Bakken a return of the bundles, which demand was refused, and Bakken was ejected from the land by the sheriff. The wheat in controversy has a value of $292.12.

On the trial, with reference to the first disputed fact, a number of witnesses, whose qualifications were admitted, testified that they saw the standing wheat at the time it was cut, and that it was then ready for cutting and harvest; that, while it was cut earlier than most wheat in the neighborhood, it was also planted earlier; that wheat should be cut before fully ripe, and allowed to ripen on the ground; that most of the wheat in the neighborhood was cut approximately two weeks later with a "header," while this wheat was cut with a binder, and that wheat should be cut with a binder two weeks earlier than it should be cut with a header. These witnesses also testified that the bundles laid out in the field for a considerable period of time before threshing, during which time they were subjected to the effects of heavy storms; that such conditions

would affect the "looks and color" of the wheat; that the season of 1925 was a dry season, which would affect the size of the kernels and cause some of them to shrivel.

Bakken testified that he examined the grain after it was threshed, and found that it was cut when it was ripe; that the grain had a ripe color; "it was brown, no green kernels," with a few shriveled kernels; that it was graded as No. 2 and No. 3. A wheat buyer testified that wheat cut green would have a greenish cast, and that, in his opinion, wheat cut green, especially if it laid out in a storm, would not grade either No. 2 or No. 3 according to federal grades.

In conflict with the foregoing testimony, a witness testified that the grain was delivered at the Valier elevator, and that he took the samples, which were produced and admitted in evidence. The witness testified that, in his opinion, the wheat was cut too green, and that "from the looks of that wheat it was cut a little bit too green." A grain grader testified that the wheat was light, some kernels shriveled, and that it had a greenish shade, and from these facts he concluded that the grain was cut too green.

With reference to the second disputed fact, Bakken testified that he was in possession of the lands in question from the time of his lease until he was evicted on August 5, and, in refutation of his statement, his testimony taken on the hearing on application for the writ of assistance was read into the record. From this record it appears that he then testified that Amon was holding the premises as a home for himself and family, and that he (Bakken) was not claiming it under his lease, but was just living with the Amons.

On a submission of the case the court adopted the agreed statement as its findings on the facts therein contained, and on the disputed facts found (a) that at the time the wheat was cut it was mature and ready for cutting and harvesting; and (b) that Bakken was in the actual physical possession of the lands during the time mentioned, claimed the right to possession by virtue of his lease, and occupied the lands adversely to

the defendant Kester. Judgment was entered on the findings in favor of the defendants, and from this judgment plaintiff has appealed.

1. The first and second assignments of error challenge the [1] correctness of the court's findings on the evidence adduced as to the two disputed facts. These findings were made on sharply conflicting testimony, and are supported by substantial evidence, and will not, therefore, be disturbed. (*Plymale* v. *Keene,* 76 Mont. 403, 247 Pac. 554.)

2. The remaining assignments raise the question of the [2] respective rights of the parties hereto under the facts disclosed by the record and the following principles of law:

The plaintiff's right to the immediate possession of the premises purchased, on production of his certificate of sale, became final and incontestable, on the failure of Amon to move for a modification of the decree of foreclosure, as against all persons bound by the decree, whether that provision was rightfully or wrongfully incorporated in the decree. (*State ex rel. Kester* v. *District Court,* 74 Mont. 100, 238 Pac. 875.) Such is the right of every purchaser of real estate at mortgage foreclosure sale, as against the judgment debtor and those claiming under him by lease made after the sale, except where the mortgagor brings himself within the provisions of section 9449, Revised Codes of 1921. (*Dyer* v. *Schmidt,* 67 Mont. 6, 213 Pac. 1117.)

3. Not only is such a purchaser entitled to possession of the [3] premises during the statutory period of redemption, but he is the holder of the legal and equitable title thereto, while there remains in the judgment debtor the mere personal privilege of redeeming. (*State ex rel. Hopkins* v. *Stephens,* 63 Mont. 318, 206 Pac. 1094; *Brown* v. *Timmons,* 79 Mont. 246, 256 Pac. 176.)

4. However, being the owner of the land and entitled to [4] immediate possession thereof does not necessarily constitute the plaintiff the owner of the crops growing thereon. It is held in some jurisdictions that crops pass on sale of realty by reason of being attached to the soil (*Cantrell* v. *Crane,* 161

Mo. App. 308, 143 S. W. 837; *Carpenter* v. *Carpenter,* 154 Mich. 100, 117 N. W. 598), but in states having statutes defining real property, similar to our own (sections 1996, 6667 and 10713), it is held that annual crops or emblements are not part of the real estate, but may pass, in the absence of a reservation in the deed, under certain circumstances, by reason of the rule that an instrument is to be construed most strongly against him who made it. (*Bjornson* v. *Rostad,* 30 S. D. 40, Ann. Cas. 1915A, 1151, 137 N. W. 567; *Vulicevich* v. *Skinner,* 77 Cal. 240, 19 Pac. 424.)

5. Under either line of authorities, "where the owner of land sells it with the right of immediate possession in the purchaser, and without reservation of the emblements standing upon the land and the purchaser takes possession before severance, title passes to the emblements as well as to the land"; otherwise, "the anomalous situation would be presented of the ownership by one of personal property upon the land of another without right in the owner to enter and take it." This principle has been extended in this state to the situation arising where the lands have been sold at decretal or execution sale. (*Power Merc. Co.* v. *Moore Merc. Co.,* 55 Mont. 401, 177 Pac. 406.)

6. Analogous to the above principle is the rule that "where a mere intruder upon lands plants crops thereon, such crops, as long as they remain unsevered, are the property of the owner of the land." (17 C. J. 381, and cases cited.) But—

7. In either case the sub modo ownership may be defeated by the planter of the crops harvesting them, when ripe, and thus appropriating to himself, as owner, that which he planted and cultivated. (*Power Merc. Co.* v. *Moore Merc. Co.,* above.)

8. A corollary to the above principles is the doctrine, of [5] almost universal application, that when an occupant of lands plants, cultivates and harvests crops during the term of his occupation, they are his personal property, whether he occupied the land as a purchaser, a tenant, or a mere trespasser holding the land adversely to the real owner, and whether he came into possession of the land lawfully or not,

provided he remain in possession until after the crops are harvested. (17 C. J. 381; *Shamlin* v. *Wells,* 197 Cal. 716, 242 Pac. 483; *Lynch* v. *Sprague Roller Mills Co.,* 51 Wash. 535, 99 Pac. 578; *Smith* v. *Howell,* 91 Or. 279, 176 Pac. 805; *Story* v. *Lang,* 87 Kan. 727, 125 Pac. 72; *First Nat. Bank* v. *Montana Emporium Co.,* 59 Mont. 584, 197 Pac. 994.)

9. By the agreed statement of facts it is stipulated that [6]  Bakken went into possession of the lands under a lease from Amon, and lived thereon and remained in the "actual possession thereof" until he was finally evicted by the sheriff on August 5, the day after the crops were severed from the land, "excepting in so far as such possession may have been changed or affected by" his testimony on the hearing on application for a writ of assistance or by Kester's demand for possession. As to his testimony, the court found on conflicting evidence that his possession was not thereby affected, and, as heretofore stated, that finding cannot be disturbed. Under the terms of his lease, Bakken furnished the seed and planted and cultivated the crop, and was obligated to himself divide it, when harvested, and to deliver the one-fourth thereof to his landlord as rental; he was therefore a tenant, and not a mere "cropper." (*Cook-Reynolds Co.* v. *Wilson,* 67 Mont. 147, 214 Pac. 1104; *First Nat. Bank* v. *Coit,* 79 Mont. 468, 257 Pac. 469.) The crop was, therefore, his personal property, as between him and Amon, and not Amon's to pass, on the sale made.

No question is raised in the agreed statement as to the bona fides of the transaction between Amon and Bakken, and, in the face of the stipulation above referred to, we cannot raise such a question.

10. Under the facts agreed upon, we might hold that these crops, the personal property of the tenant raised on the land during the term of his tenancy, were not a part of the freehold, and did not pass on sale by the owner of the land. (*Estep* v. *Bailey,* 94 Or. 59, 185 Pac. 227; *Dannefer* v. *Aurand,* 106 Kan. 605, 189 Pac. 371.)

In *Cassilly* v. *Rhodes,* 12 Ohio, 88, it is said: "Between mortgagor and mortgagee, a mortgagor in possession is a tenant at will; and, if the emblements are not protected in his hands, it is because he may obtain their value in account, on bill to redeem. But he may lawfully lease, subject to the mortgage; and when the mortgagee defeats the estate, either by entry or judicial sale, the annual crops are saved for the tenant, under the common rule relating to emblements, because the termination of the lease is uncertain. The elder jurists find abundant reason for the doctrine, in the protection the law owes to agriculture. (Co. Litt. 55; 4 Kent, Com. 73.)"

In *Aldrich* v. *Bank of Ohiowa,* 64 Neb. 276, 97 Am. St. Rep. 643, 57 L. R. A. 920, 89 N. W. 772, a case in which the facts are similar to those in the instant case, the court pointed out that the date of the sale, after foreclosure decree, is uncertain, and, in holding that the tenant was the owner of and entitled to the crops, closed with the declaration: "'It is not for the interest of any party, nor for the public interest, that the land should thenceforth [after decree] lie waste; then, there may have been no crop sown or planted.' This failure to sow or plant is what the law discourages, and it can only encourage sowing and planting, under circumstances like these, by assuring a man that, if he sow, he shall reap."

However, as his counsel concede that Bakken's occupation was wrongful after demand made upon him by Kester, we will consider the effect of that demand upon his possession under the exception made in the agreed statement of facts.

11. Counsel for plaintiff contends that the demand was [7] equivalent to securing actual possession, relying upon the statement that: "While an entry, in order to revest possession, must not be merely casual, but with the intention of claiming and for the purpose of taking possession, a successful ouster is not essential; acts held to be equivalent to an actual entry include the making of a demand at such time and place that, if complied with, possession would be at once secured." (36 C. J. 603.) It will be noted that the text does not declare

that the demand is equivalent to actual possession, but actual "entry." Here the plaintiff need not rely upon the fiction of demand constituting entry, as he actually entered upon the land for the purpose of demanding possession.

Again, the declaration is made by the text-writer in his chapter on ouster of a tenant by his landlord for breach of the terms of his lease, and, while such a demand would terminate the tenancy, it would not place the landlord in the actual possession of the premises; but, even if we concede that, under such circumstances, the fiction would extend that far, it could not have universal application to the subject of demand for possession of real property; the fallacy of such an application of the rule is apparent from the following illustration:

A enters upon the land of B, and remains in adverse, hostile possession for a period of eight years, when B makes a demand for possession at "such time and place that, if complied with, possession would be at once secured." A refuses, and continues in possession for two additional years, when B, at last, brings an action for possession, and to his complaint A answers, setting up title by prescription under sections 6818 and 9018, Revised Codes of 1921; could B defeat that title by alleging and showing his demand? If the rule relied upon applies generally, he could; but, in order to defeat such a title, the adverse possession of the claimant must have been disturbed or the continuity of the possession broken during the statutory period. (*McDonnell* v. *Huffine,* 44 Mont. 411, 120 Pac. 792; *Scott* v. *Jardine Gold Min. Co.,* 79 Mont. 485, 257 Pac. 406.)

12. Bakken, holding under a claim of right, was in the adverse possession of the lands in the same manner as would be one who holds lands adversely for the purpose of perfecting title by prescription.

13. The ownership of crops raised on land held adversely does not depend upon the ownership of the land, or the right to the possession thereof, but upon who was in the actual physical possession, and ownership and the right to possession are not in issue in an action involving the ownership of the

crops.　(*Fuglede* v. *Wenatchee Co-op. Assn.*, 134 Wash. 350, 39 A. L. R. 953, 235 Pac. 790; *Wilson* v. *Panne,* 1 Kan. App. 721, 41 Pac. 984.)

14. It is therefore apparent that, in the absence of an actual ouster and the securing of the actual possession of the premises before the crops were severed, the adverse possession of the planter was neither changed nor affected by the demand made upon him; his rights would not be affected by a judgment in ejectment or the perfecting of title on foreclosure proceedings (*Batterton* v. *Chiles,* 12 B. Mon. (Ky.) 348, 54 Am. Dec. 539; *Aultman & Taylor Co.* v. *O'Dowd,* 73 Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756), but only by the execution of a writ of assistance thereafter.

15. The plaintiff mistook his remedy.　Section 8687, Revised [8] Codes of 1921, provides that "the detriment caused by the wrongful occupation of real property, in cases not embraced in sections 8688, 8694, and 8695 of this Code, or provided in the Code of Civil Procedure, is deemed to be the value of the use of the property for the time of such occupation." The fact that the statute declares that the owner may recover the value of the use and occupation of his land precludes the idea of his right to recover the crops or their value, which include, not only the value of the use of the land, but also the value of the seed planted and the time and labor of the one who plants and cultivates the land.　(*Woodcock* v. *Carlson,* 41 Minn. 542, 43 N. W. 479; *Stockwell* v. *Phelps,* 34 N. Y. 363, 90 Am. Dec. 710; *Johnson* v. *Fish,* 105 Cal. 420, 45 Am. St. Rep. 53, 38 Pac. 979; *Groome* v. *Olmstead,* 101 Cal. 425, 35 Pac. 1021.)

16. It is suggested that, as Bakken's possession was, after [9, 10] the demand, wrongful, he became then an involuntary trustee for Kester in holding and harvesting the crops, under section 7886 or section 7887, Revised Codes of 1921, which read: (7886). "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."

(7887). "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

It will be noted that these are not among the sections expressly excepted from the rule in section 8687, and are contained in the Civil Code, and not in the Code of Civil Procedure, mentioned therein, and it would seem therefrom that the legislature did not intend to extend the exception to them. These sections are general in their nature; they do not specify to what wrongs or what kind of property they apply; while section 8687 is specific, both as to the wrong and the property, the "wrongful occupation of real property," and, as they are inconsistent, the latter is paramount to the former. (Sec. 10520, Rev. Codes 1921; *State ex rel. Ewald* v. *Certain Intoxicating Liquors,* 71 Mont. 79, 227 Pac. 472.)

Further, this court has repeatedly held that the basis of a [11] constructive trust is fraud, actual or constructive, or the breach of fiduciary relations. The wrongful acts referred to in the statutes on constructive frauds must be wrongdoing amounting to constructive fraud. (*Largey* v. *Leggat,* 30 Mont. 148, 75 Pac. 950; *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127; *MacGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436; *Word* v. *Moore,* 66 Mont. 550, 214 Pac. 79; *Meagher* v. *Harrington,* 78 Mont. 457, 254 Pac. 432; *Mather* v. *Musselman,* 79 Mont. 566, 257 Pac. 427.) Sections 7886 and 7887 are therefore not applicable here.

The illustration given above, to show the fallacy of a universal application of the rule stated as to demand, is also applicable here; if the demand was sufficient to constitute Bakken an involuntary trustee of Kester, the demand made upon the supposititious A by B would constitute A an involuntary trustee of B and prevent the acquisition of title by prescription.

For the reasons stated, the judgment is affirmed. Remittitur forthwith.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE STARK concur.

JUSTICES MYERS and GALEN, dissenting:

We dissent. In our opinion, the doctrine of the case of *Union Central Life Ins. Co.* v. *Jensen,* 74 Mont. 70, 237 Pac. 518, is controlling as respects the rights of the parties to this action. Kester having made purchase of the real estate at decretal sale, as such was entitled to the immediate possession of the premises upon the presentation of the sheriff's certificate of sale and demand made upon the occupant for possession. The tenant took the property with constructive notice of the mortgage thereon, and the terms and conditions thereof, so that he should not be heard to complain because of being dispossessed before the expiration of his lease of the property from the owner. (*Penryn Fruit Co.* v. *Sherman,* 142 Cal. 643, 100 Am. St. Rep. 150, 76 Pac. 484.)

In the case of *Isbell* v. *Slette,* 52 Mont. 156, 155 Pac. 503, it was by this court correctly held that a "chattel mortgage upon crops thereafter to be planted cannot operate as an encumbrance upon the land, where the crops are to be grown, and therefore, in the present instance, Geo. D. Isbell, after the execution of this mortgage and before any crops were planted, might have sold his homestead to a third party, and the purchaser could not have been held bound by the mortgage, and a lessee is in no worse situation. This is the rule followed by the great weight of authority, and commends itself to our judgment. (*Simmons* v. *Anderson,* 44 Minn. 487, 47 N. W. 52; *McMaster* v. *Emerson,* 109 Iowa, 284, 80 N. W. 389; *Reeves & Co.* v. *Sheets,* 16 Okl. 342, 82 Pac. 487; Jones on Chattel Mortgages, 5th ed., sec. 143a.)"

"A mortgagor compelled to surrender the estate is not, like a tenant at will, entitled to the emblements, though produced by the mortgagor's labor. The mortgagee may evict him without notice, and retain the emblements. A lessee holding under the mortgagor by a lease granted subsequently to the mortgage, and without the mortgagee's concurrence, has no greater rights than the mortgagor; and when evicted by the paramount title of the mortgagee, as he may be without notice, he cannot retain the emblements. A purchaser at a foreclosure sale is entitled to the crops growing at the time of the sale, and may maintain trespass against the mortgagor of his lessee for taking and carrying them away." (Jones on Mortgages, 2d ed., sec. 698.)

"Under the statute a purchaser at a foreclosure sale is entitled to possession of the premises from the day of sale, unless they are in the possession of a tenant holding under an unexpired lease, and in such case he is entitled to receive the rents or the value of the use and occupation thereof, and, if the annual crops are not severed from the soil prior to the sale, they pass, with the title, to the purchaser, as against the mortgagor and parties claiming an interest therein under him subsequent to the mortgage. (2 Jones, Mortg., sec. 1568; 1 Washb. Real Prop. 144; Wiltsie, Mortg. Forec., sec. 587; 8 Am. & Eng. Enc. Law, (2d Ed.) 303; *Batterman* v. *Albright* [122 N. Y. 800], 25 N. E. 856 [19 Am. St. Rep. 510], 11 L. R. A. 800, and note; *Heavilon* v. *Bank,* 81 Ind. 249.) This is elementary law, and is not questioned by the defendant, but his contention is that the giving of the chattel mortgage to the ditch company by Hall, prior to the sale under the foreclosure decree, was a constructive severance of the growing crops. There is authority for such view. (*Willis* v. *Moore,* 59 Tex. 628 (46 Am. Rep. 284); *White* v. *Pulley* (C. C.), 27 Fed. 436.) But it does not commend itself as the better one. The general rule of the common law is that growing crops form a part of the real estate to which they are attached, and follow the title thereto. They are, however, for many purposes, regarded as personal property, and subject to voluntary sale or mortgage

by the owner (Reed, St. Frauds, sec. 708); but the right of a purchaser or mortgagee is subject to the contingency that it may be wiped out by a foreclosure and sale under a mortgage given by the vendor or mortgagor on the land before the crop was sown, unless it is severed from the soil prior to such sale. (*Sherman* v. *Willett*, 42 N. Y. 146.) A real estate mortgage is not only a lien upon the land, but also upon the annual crops growing thereon, unless they belong to a tenant, subject only to the right of severance prior to the sale and entry under the mortgage. (1 Jones, Mortg., sec. 697; *Rankin* v. *Kinsey*, 7 Ill. App. 215.) Unless there is an actual severance, the crops pass with the title to the soil to which they are attached as against the mortgagor, and a previous sale or mortgage by him will not constitute a severance as against a purchaser at the foreclosure sale. The test is whether there has been an actual severance. If so, the crops become personal property, and do not pass to him who purchases the land subsequent to the severance; if not, they go with the land. (*Anderson* v. *Strauss*, 98 Ill. 485; *Shepard* v. *Philbrick*, 2 Denio [N. Y.] 172 [174]; *Crews* v. *Pendleton* [1 Leigh (Va.) 297] 19 Am. Dec. 750, and note; *Beckman* v. *Sikes*, 35 Kan. 120, 10 Pac. 592; *Gillett* v. *Balcom*, 6 Barb. [N. Y.] 370.)" (*Jones* v. *Adams*, 37 Or. 473, 82 Am. St. Rep. 766, 50 L. R. A. 388, 59 Pac. 811.)

In our opinion, upon the refusal of the tenant, upon demand, to surrender possession of the property to the purchaser at execution sale, the tenant became an involuntary trustee of the landlord's share of the crop for the use and benefit of such purchaser (sec. 7887, Rev. Codes 1921), for "that which ought to have been done is regarded as done in favor of him to whom, and against him from whom, performance is due" (Id., sec. 8758).

The decree of sale provides that the purchaser or purchasers "be let into possession of said premises, and any of the parties to this action who may be in possession of said premises * * * shall deliver possession thereof to the purchaser or purchasers on production of the said sheriff's certificate of

sale." The property was sold under the decree to the plaintiff on April 28, 1925, and a sheriff's certificate of sale was thereupon delivered to him. The day following, the plaintiff visited the premises, exhibited his certificate of sale, and demanded possession of the premises of the defendants, which was refused. Thereafter, on May 13, 1925, the plaintiff applied to the district court for a writ of assistance, which was finally issued to him by this court on July 14, 1925. (*State ex rel. Kester* v. *District Court,* 74 Mont. 100, 238 Pac. 875.) However, it was not executed by the sheriff until August 4, 1925, after the crops had been severed by the tenant in possession. The tenant holding possession of the land after demand made upon him by the mortgagee was neither a tenant at will nor by sufferance, but rather a mere trespasser. (*Power Merc. Co.* v. *Moore Merc. Co.,* 55 Mont. 401, 177 Pac. 406.)

The judgment should be reversed.